## SCHWARTZBACH v. THOMPSON.
### No. 97.

Municipal Court of Appeals for the District of Columbia.

Aug. 16, 1943.

F. Bryan Potter, of Washington, D. C., for appellant.

Russell Morris, of Washington, D. C., for appellee.

Before RICHARDSON, Chief Judge, and CAYTON and HOOD, Associate Judges.

CAYTON, Associate Judge.

The trial judge predicated his finding and judgment on a memorandum opinion which he filed in the case and which has

proven helpful on this appeal. It has by stipulation of counsel been designated as the statement on appeal.

On the night in question plaintiff's automobile was lawfully parked for the night, and while so parked was run into by an automobile owned by defendant and operated by one Gladys Benford.

Plaintiff depended upon that part of the Financial Responsibility Act for this District,[1] which provides in part: "Whenever any motor vehicle * * * shall be operated * * * by any person other than the owner, with the consent of the owner, express or implied, the operator thereof shall, in case of accident, be deemed to be the agent of the owner of such motor vehicle, and the proof of the ownership of said motor vehicle shall be prima facie evidence that such person operated said motor vehicle with the consent of the owner."

To overcome the presumption raised by the statute defendant testified that on the evening in question he had left his car locked on a parking lot near his home; that he had not authorized anyone to drive his car on that night; that he knew Miss Benford and that she used his apartment as a place to get her mail; that because of this collision she had been convicted of driving without a permit but that he had not brought any charge against her for using his car without permission; that she was or had been a narcotics addict; at the time of the collision she was on probation, and at the time of the trial she was a prisoner at Occoquan; that she knew where he parked his automobile; that on the night in question at about 11 o'clock he was in bed and she came to the door of his apartment and rang or knocked; that he left his bed and admitted her and that she said she wanted to use the telephone; that he gave her permission to use the telephone and went back to bed and turned over and went to sleep; that the key to his automobile was in a pocket of his trousers which were hanging over a chair near the telephone; that he assumed she had stolen the key out of his pocket; that he also knew Miss Benford's mother; and that on one or more occasions Miss Benford had driven his automobile while he was in it.

Because of the evasive nature of many of defendant's replies the trial judge caused Miss Benford to be subpoenaed and brought from the District workhouse to give testimony, the important parts of which were as follows: On the night in question she was "pretty drunk;" she had another girl with her; she went to defendant's apartment alone and he was sitting in his apartment reading. After an interval of about a half an hour, during which they discussed her troubles, he went to bed. He told her she could stay if she wanted to. She took his automobile key from his pocket, went out and got the automobile from the parking lot and drove it and was involved in the collision. She said she stayed in the defendant's apartment sometimes and slept on the couch in the sitting room and that her mother also stayed there sometimes and that sometimes her sister had been there too; that the defendant gave her money from time to time; that she had driven this automobile before, sometimes alone and sometimes with defendant; that on some occasions the defendant let her have the key to the automobile; that on previous occasions she had always asked him for the keys but that she didn't ask him for them on this occasion. She remembered after the collision getting out of the car and running. She believed during her visit she had used the defendant's telephone but was not sure about that. She didn't think he had been in the bedroom when she was telephoning. The defendant's keys had been in his trousers pocket over a chair in the bedroom.

Upon this showing the trial judge found for plaintiff.

The question before us is whether the decision was plainly wrong so as to require a reversal,[2] or whether the evidence with the inferences reasonably drawn therefrom justified the finding.

Concerning the applicable statute the United States Court of Appeals for this District has ruled that: "The effect of this provision is simply to shift the burden of proof and to impose on the defendant owner the affirmative duty of proving that the car was not at the time of the accident operated with his express or implied consent. Casey v. United States, 276 U.S. 413, 418, 48 S.Ct. 373 [603], 72 L.Ed. 632. This presumption continues

---

[1] Code 1940, 40—403.
[2] American Heating Engineering Co. v.

Kennedy-Chamberlin Co., D.C.Mun.App., 31 A.2d 654.

until there is credible evidence to the contrary, and ceases when there is uncontradicted proof that the automobile was not at the time being used with the owner's permission." Rosenberg v. Murray, 73 App. D.C. 67, 116 F.2d 552, 553.

The test is therefore whether the showing before the trial judge was such as to justify a holding that defendant had failed to break the force of the statutory presumption. In applying that test, and in measuring the force, effect and extent of the testimony we, like the trial court, must be governed by the rules of reason, credibility, and probability. But the trial judge was in a better position than we to judge the cogency and persuasiveness of the evidence and to weigh it for credibility, evasions, and contradictions. He saw and heard the witnesses. He could judge, as we cannot, their appearance and demeanor on the stand, and whether their testimony was given haltingly and evasively, or with candor. This we cannot do from the cold pages of the record.

If the judge believed that the evidence established that the use of the car was unauthorized, it was of course his duty to hold that the presumption had been shattered and rendered inoperative.

If applying the rule of falsus in uno he believed there was no sufficient evidence to overcome the presumption, he might have treated such insufficient evidence as no evidence at all, and would then have been justified under Forrester v. Jerman, 67 App.D.C. 167, 90 F.2d 412 in rejecting the defense.

If he believed, as his memorandum indicates he did, that the testimony revealed "what might be considered inconsistencies and self-contradictions, and [left] some doubts as to the absolute credibility of the witnesses",[3] he was presented with "typical jury functions" which he as trier of the facts was required to exercise. Remembering "the proposition that defendant's proof may be contradicted by his own evidence"[4] and believing as he did that the showing was insufficient to neutralize the statutory presumption, it was his duty to find for plaintiff. And we find no reason in law, logic or policy to justify us in disturbing his findings.

To take a different view would surround these cases with an air of unreality, and create an easy opportunity for defendants confronted with such claims to resort to the simple device of swearing a plaintiff out of court.

Defendant also contends there was error in finding liability without express proof of specific acts of negligence on the part of defendant's driver. This contention is without merit. Even aside from the driver's own admission that she was intoxicated—a ground upon which liability could have been predicated—we hold that striking a parked vehicle may furnish some evidence of negligence,[5] and put a defendant on his proof. On this point defendant offered none.

Affirmed.

[3] Hiscox v. Jackson, 75 U.S.App.D.C. 293, 127 F.2d 160, 161.

[4] Id.

[5] Bryne v. Great A. & P. Tea Co., 269 Mass. 130, 168 N.E. 540. To same effect is Rosenberg v. American Railway Express Co., Sup., 198 N.Y.S. 224. See also cases listed under note 96, page 168, Berry on Automobiles, 7th Ed.