Thomas P. ATHRIDGE,
et al., Plaintiffs,

v.

Jorge IGLESIAS, et al., Defendants.

Thomas P. Athridge, et al., Plaintiffs,

v.

Hilda Rivas, Defendants.

Nos. CIV.A.89–1222(RMU/JMF),
CIV.A.92–1868(RMU/JMF).

United States District Court,
District of Columbia.

Oct. 15, 2001.

Lisa Rene Riggs, Koonz, McKenney, Johnson, Depaolis & Lightfoot, William Joseph Rodgers, Charles Belsome Long, Collier, Shannon, Rill & Scott, P.L.L.C., Washington, DC, Martin Stanley Protas, Bethesda, MD, for Plaintiffs.

Irving Starr, Richard Edward Starr, Alexandria, VA, David F. Grimaldi, Martell, Donnelly, Grimaldi & Gallagher, P.A., Washington, DC, for Defendants.

## MEMORANDUM OPINION AND ORDER

FACCIOLA, United States Magistrate Judge.

This case has been referred to me for all purposes pursuant to LCvR 73.1. Before me are the parties' cross motions for summary judgment.

## I. BACKGROUND

There is no dispute as to the following facts:

In July 1987, defendants Francisco Rivas ("Mr.Rivas") and Hilda Rivas ("Mrs.Rivas"), husband and wife ("the Rivases"), residents of Washington, D.C., took an extended vacation to Guatemala. Before they left, the Rivases and Alicia Iglesias ("Mrs.Iglesias"), Mrs. Rivas' first cousin, arranged for Jorge Iglesias ("Jorge"), the 17–year–old son of Mrs. Iglesias, to mow the Rivas' lawn while they were away. On July 29, 1987, Jorge appeared at the Rivas' residence and began mowing the lawn. Upon entering the Rivas' home to use the bathroom, Jorge found the keys to the Rivas' 1986 Volkswagen Jetta in a jar on a window sill by the door. Although he was not a licensed driver, Jorge decided to go for a drive. After meeting up with some friends, he accidentally struck and injured 15–year–old Thomas Athridge, Jr. ("Tommy"), causing permanent brain damage. The Jetta was titled in the name of Churreria Madrid Restaurant, at the time a partnership owned by Mr. and Mrs. Rivas. Mrs. Rivas was the primary operator of the vehicle, which was driven both for restaurant functions and for her personal use.

The collision generated five lawsuits in this Court. In Civ. No. 89–1222 Tommy sued Jorge, Mr. Rivas, and Churreria Madrid Restaurant. In Civ. No. 92–1866, Tommy sued the Aetna Casualty & Surety Company, premising his complaint on the failure of Jorge's parents to supervise him. In Civ. No. 92–1867, Tommy sued Jorge's parents, and in Civ. No. 92–1868, Tommy sued Mrs. Rivas. Lastly, in Civ. No. 96–2708, Tommy again sued Aetna Casualty and Surety, Jorge's insurer.

By his order of November 13, 1992, Judge Thomas Penfield Jackson consolidated Civ. No. 89–1222 with Civ. Nos. 92–1866, 92–1867 and 92–1868. On July 19, 1995, Judge Jackson granted summary judgment in favor of all defendants in all these cases except Jorge. The remaining claim, Tommy's negligence action against Jorge in Civ. No. 89–1222, was then transferred to Judge Harold Greene on March 3, 1996. After a trial, Judge Greene found for plaintiffs and entered judgment in Tommy's favor in Civ. No. 89–1222 on November 8, 1996. Judge Greene's decision was summarily affirmed on August 12, 1997. *Athridge v. Iglasias,* No. 96–7261, 1997 WL 404854 (D.C.Cir. June 30, 1997).

In the meantime, Tommy appealed from Judge Jackson's July 19, 1995, grant of summary judgment. The Court of Appeals affirmed the award of summary judgment as to all the defendants in all the suits, except the defendants Mr. Rivas and Churreria Madrid Restaurant in Civ. No. 89–1222 and the defendant Mrs. Rivas in Civ. No. 92–1868. *Athridge v. Rivas,* 141 F.3d 357 (D.C.Cir.1998). After remand, Civ. Nos. 89–1222 and 92–1868 were consolidated once more. Since then, the parties have conducted further discovery, including the plaintiff's deposition of Mr. and Mrs. Rivas, and have now filed cross motions for summary judgment.[1]

## II. ANALYSIS

### Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, a court must enter summary judgment if there is "no genuine issue as to any material fact and if the moving party is entitled to a judgment as a matter of law." *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

There is little question that the issue of whether Jorge had the Rivases consent to use the Jetta on July 29, 1987 is a material one, for it is a necessary requirement of the Athridges' claim. As to genuinensss, Rules 56(c) & (e) require the non-movant to point to specific evidence that would permit a *reasonable* jury to return a verdict for the non-movant. *Anderson v. Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. 2505; *Matsushita Elec. Indust Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Flemmings v. Howard Univ.,* 198 F.3d 857, 860

(D.C.Cir.1999); *Anderson v. Zubieta,* 180 F.3d 329, 338 (D.C.Cir.1999). Furthermore, the court must draw all *reasonable* inferences in the non-movant's favor. *Flemmings,* 198 F.3d at 860; *Zubieta,* 180 F.3d at 338. Therefore, although the non-movant's burden in defeating a summary judgment motion is not very demanding, neither is it negligible. As the Supreme Court phrased it in *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968), the non-movant's evidence must be "significantly probative." As I have emphasized, that evidence is invariably tested by whether the inference to be drawn from it is reasonable and would thereby support a reasonable finder of fact's verdict in favor of the non-movant.

Moreover, as noted in *Matsushita,* 475 U.S. at 574, 106 S.Ct. 1348, the factual context surrounding the disputed issues is central in determining genuineness. For example, in response to the moving party's contention that the opposing party had violated antitrust statutes, the Court stated, "It follows from these stated principles that if the factual context renders respondents' claim implausible—if the claim is one that simply makes no economic sense—respondents must come forward with more persuasive evidence to support their claim than would otherwise be necessary." *Id.,* at 587, 106 S.Ct. 1348.

A similar obligation is equally applicable in the instant case. On the day of the accident, the Rivases were out of the country when their nephew, unlicensed and underage, took their car. The implausibility that they, without any reason, would have ever consented to such a remarkable,

1. Plaintiffs and defendants both offer lengthy, partisan versions of the procedural history of this action and its implications for their present motions. Rather than proceeding down this complex path, I will instead confine this opinion to their present motions for summary judgment which will resolve the case. I do not understand either to be complaining that the procedural history precludes my doing so.

extraordinary, and dangerous use of their car while they were out of the country requires that plaintiffs' evidence of consent amount to more than dubious inferences to be "significantly probative." *Cities Service*, 391 U.S. at 290, 88 S.Ct. 1575.

### Introduction

Defendants contend that they are not vicariously liable as a matter of law under the District of Columbia's Motor Vehicle Safety Responsibility Act ("MVSRA"), D.C.Code Ann. § 50–1301.8 (2001) (formerly § 40–408).[2] Plaintiffs, with remarkable ambition, claim they are entitled to summary judgment based on the very same provision, even though Jorge himself has upon numerous occasions conceded that he took the Jetta on impulse and without permission. Jorge's Answers to Plaintiffs' First Set of Interrogatories and Requests for Documents, at 2; Jorge's Testimony at 1996 Trial, at 16; Jorge's Deposition, at 1–40.

### Defendants' Motion for Summary Judgment

■■■■ Under the MVSRA, the owner of an automobile bears the burden of proving that the user did not have consent. But this presumption of consent is rebuttable by uncontradicted and conclusive evidence of non-consent. *Gaither v. Myers*, 404

F.2d 216, 218 (D.C.Cir.1968); *Jones v. Halun*, 296 F.2d 597 (D.C.Cir.1961), *cert denied* 370 U.S. 904, 82 S.Ct. 1249, 8 L.Ed.2d 401 (1962); *Simon v. Dew*, 91 A.2d 214, 215–16 (D.C.Mun.App.1952). On the other hand, if the plaintiff can establish sufficient facts to discredit the defendant's asserted non-consent, then submission of the issue to a jury is warranted. *Alsbrooks v. Washington Deliveries, Inc.*, 281 A.2d 220, 221 (D.C.1971).

If defendants meet their burden by presenting uncontradicted and conclusive evidence of non-consent, then their motion for summary judgment must be granted.

### *Defendants' Evidence of Non–Consent*

■■■■ First and foremost, defendants offer the testimony of Mr. and Mrs. Rivas, Francisco Rivas, Jr., their son, and Jorge himself that Jorge did not have permission to use the Jetta on July 29, 1987. Like any other evidence, an owner's testimony of non-consent is not in itself dispositive, and may be contradicted by a lack of credibility, inconsistencies in the testimony, or inconsistent external facts.[3] *Gaither*, 404 F.2d at 218; *Lancaster v. Canuel*, 193 A.2d 555, 558 (D.C.1963). Indeed, the owner may explicitly assert non-consent, but evidence to the contrary may support

---

**2.** The relevant provision reads:

Whenever any motor vehicle, after the passage of this chapter, shall be operated upon the public highways of the District of Columbia by any person other than the owner, with the consent of the owner, express or implied, the operator thereof shall in case of accident, be deemed to be the agent of the owner of such motor vehicle, and proof of the ownership of said motor vehicle shall be prima facie evidence that such person operated said motor vehicle with the consent of the owner.

**3.** Note, however, that " 'discredited testimony is not [normally] considered a sufficient basis for drawing a contrary conclusion.' " *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505,

quoting *Bose Corp. v.Consumers Union of United States, Inc.*, 466 U.S. 485, 512, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984). Thus, even if the plaintiffs could point to reasons to disbelieve Jorge and the Rivases, disbelief of those reasons in itself would not warrant denial of the defendant's motion for summary judgment. Plaintiffs would still be obliged to present affirmative evidence upon which a reasonable finder of fact could predicate a verdict in their favor. *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505; *Accord Moore v. Chesapeake & Ohio Ry. Co.*, 340 U.S. 573, 574, 71 S.Ct. 428, 95 L.Ed. 547 (1951); *Goldhirsh Group, Inc. v. Alpert*, 107 F.3d 105, 109 (2nd Cir.1997).

a judgment against him. *See Schwartzbach v. Thompson*, 33 A.2d 624 (D.C.1943).

What makes this case unusual, if not unique, for a MVSRA case, is the fact that the driver, too, has testified to the owners' non-consent. In the ordinary vicarious liability tort suit, the principal and the agent may adopt contrary positions with respect to consent. The driver/agent may do his utmost to argue that he had consent, in order to share liability with the owner in the hopes that the owner's insurance carrier can satisfy the judgment that will be rendered against him and the owner. Conversely, the owner/principal and his insurance carrier will argue non-consent, trying to pin all the blame, and the liability, on the driver. Here, the Rivases and GEICO their carrier, representing their respective interests run true to that form and assert Jorge's non-consent. But Jorge freely admits that he took the car on impulse and without permission, confirming the Rivases' testimony on this point.

■ Plaintiffs point to no direct inconsistencies in defendants' testimony. In fact, the only direct attack on defendants' testimony of non-consent is that Mr. Rivas' affidavit should be disregarded on the grounds that he could not read English and therefore did not understand what he had signed. This argument in no way shows that Mr. Rivas did not have "personal knowledge" of the facts, and his testimony as to whether he ever gave permission to Jorge would certainly be admissible. Furthermore, his deposition testimony that Jorge did not have permission to take the car is completely consistent with his wife's testimony to that effect. No one is suggesting that he would say that Jorge had permission to take the car, had the question been asked of Mr. Rivas in Spanish. Moreover, even if we were to disregard Mr. Rivas' affidavit, the affidavits of the other three affiants stand on their own, uncontradicted in their statements that the Rivases never gave Jorge permission to drive the Jetta.

■ The unusual factual context of Jorge's use of the Jetta on July 29, 1987 further rebut the presumption of consent. Most importantly, the Rivases were out of the country on this date. Jorge's charge was limited to mowing the Rivas' lawn, a task in no way connected to the use of the Jetta. The Rivases had left the car keys in a jar inside their home and had no reason to expect that Jorge, an underage and unlicenced driver, would find them and take the car for a ride. Thus, their uncontradicted testimony, in the distinct factual context of this case, meets their burden and entitles them to summary judgment.

### Plaintiffs' Motion for Summary Judgment

While this would seem to end the case, plaintiffs' have crossed moved for summary judgment which requires me to resolve their motion as well.

Plaintiffs, by moving for summary judgment themselves, have taken upon themselves the burden of establishing that a reasonable finder of fact would have to conclude that the Rivases impliedly consented to Jorge's use of the car in the teeth of his statement under oath that he had no express permission. This is so because, while the defendant may have the burden of proof under the statute, the movant for summary judgment has the burden of establishing that no reasonable finder of fact could return a verdict in the defendant's favor and there is therefore no genuine issue of material fact that the Rivases impliedly consented to Jorge's use of the car. Thus, they have to show that based on the evidence they present, a reasonable finder of fact would have to find that the Rivases impliedly consented to Jorge's use of the car.

*Evidence of Consent*

Plaintiffs essentially concede that defendants never gave Jorge express consent to use the Jetta. Instead, they focus on the existence of an implied consent. In law, the word "imply" means that by his action or inaction one party gives another a reason to believe that a certain consequence may permissibly follow from that action or inaction. *Black's Law Dictionary* 679 (5th ed.1979);[4] *See also Paul v. Howard University*, 754 A.2d 297, 311 (D.C.2000). Thus, to use a hoary law school example, the man who drops off his clothes at a laundromat, watches as the owner writes him a ticket, and then departs without saying a word, has impliedly agreed to pay for his laundry when he picks it up. The question presented here is whether there is a genuine issue of material fact as to whether the Rivases, by their action or inaction, provided Jorge grounds to form a reasonable belief that he had their permission to use their car.

The Athridges find evidence of implied consent in (1) Jorge's alleged prior use of the vehicle; (2) the Rivas' failure to expressly prohibit Jorge from using the vehicle; (3) the close family relationship between the Rivases and Iglesiases; (4) skepticism on the part of the Iglesias' insurer on the issue of implied consent; and (5) Mrs. Rivas' declining to file a criminal complaint against Jorge for unauthorized use of the vehicle.[5] Upon closer examination, each of these arguments proves untenable, and in no meaningful way contradicts defendants' evidence of nonconsent, let alone entitles plaintiffs to summary judgment.

■ *Prior Use*—Plaintiffs insist that Jorge must have used the Jetta before the accident because of his competence in handling the stick-shift vehicle. They maintain, that the Jetta was the only stick-shift vehicle available to Jorge and all the other cars to which he had potential access had automatic transmissions. Plaintiff's Statement of Undisputed Facts at 6. Testimony by a friend of Jorge suggests that on July 29, 1987, Jorge claimed to have driven the Jetta on one or two prior occasions and that Jorge also had been seen in Francisco Rivas, Jr.'s Porsche. Plaintiffs Exhibit 12. But even if one accepts that Jorge used the Jetta or the Porsche on a prior occasion, the Athridges offer absolutely no evidence that prior to, on, or after July 29, 1987, the Rivases knew of any prior use by Jorge. If someone uses another person's car, and the owner knows of that use and does not object, the person borrowing might infer that the owner will not object if the borrower uses it again. But if the owner never learns of the use, why would the borrower think that the owner would not object the second time around? Thus, if the Rivases did not know that Jorge ever used their car before the accident, Jorge could not possibly think that he had their consent to use it on the day of the accident. Jorge's prior use, if unknown to the Rivases, cannot possibly be used as a basis to contradict the Rivases' assertions that they did not consent to Jorge's use of the Jetta on the day of the accident or to imply their consent. An inference of con-

---

**4.** Note the logical incongruity of "implying" that the driver had the owner's consent to drive the owner's car when, as in this case, the driver denies that he had such consent.

**5.** Plaintiffs also highlight the fact that the Rivases misunderstood the distinction between "consent" and "permission," concluding that their denials of permission should thus have no probative value. While their respective denials of permission may not be received as legal conclusions, they nevertheless retain significant evidentiary value as to the question of consent under the D.C. statute.

sent from his unknown prior use is patently unreasonable and thus fails to meet the minimal summary judgment standard set forth in *Matsushita* and *Anderson v. Liberty Lobby*. Instead, the theorem that the Rivases knew that Jorge had previously driven the Jetta and did not object to it is based on the wildest of speculative leaps. The first leap is that Jorge knew how to drive a manual transmission because he previously drove the Jetta which, like millions of other cars, had a manual transmission. The second leap is that the Rivases must have known that Jorge previously drove the car. Neither of those leaps is based on any evidence whatsoever and can possibly serve as a rational reason to infer the Rivases' consent.

■ Additionally, even if one accepts on faith that Jorge used the Jetta on prior occasions and the Rivases knew of this use, District of Columbia law certainly does not compel the inference that Jorge therefore had sufficient reason to think he had the Rivas' consent whenever and however he intended to use the vehicle. Consent to use a vehicle in one context or on a prior occasion is not tantamount to consent for all purposes in the future. Permitting a friend to use one's car to pick up his laundry is hardly grounds for the friend to presume he could drive the vehicle to California. What is relevant for the purposes of D.C.Code Ann. § 50–1301.8 (2001) is consent at the time of the incident giving rise to the suit. The District of Columbia understandably requires a reasonable relationship between the prior use permitted and the actual use which caused the accident. *Lancaster*, 193 A.2d at 558 (finding no consent to use a business car after hours for personal uses, even where driver had consent to use during business hours for delivery purposes); *See Hudson v. Lazarus*, 217 F.2d 344, 346 (D.C.Cir.1954) (finding no consent to use the car to go to

breakfast, even where driver had consent to return the vehicle to a workplace); *Curtis v. Cuff*, 537 A.2d 1072, 1075 (D.C.1987).

For the purposes of this case, then, plaintiff would have to show that Jorge used the Jetta on prior occasions, that the Rivases knew of that use and did not object, and that the use of the car on the day of the accident was similar to Jorge's prior use. But there is no evidence whatsoever upon which a reasonable finder of fact could predicate the conclusion that the Rivases knew of Jorge's prior use and without such evidence the finder of fact cannot possibly draw the ultimate inference—that the Rivases impliedly consented to Jorge's use of the Jetta on the date of the accident. In the absence of such evidence, plaintiffs cannot possibly be entitled to summary judgment.

■ *Failure to expressly prohibit Jorge from using the Jetta*—Plaintiff also finds consent in the Rivas' never forbidding Jorge, who was an unlicenced minor at the time of the accident, to use the vehicle. Although the absence of an express prohibition may be significant in certain contexts, it is much less so when the owner has no reason to expect an unauthorized use of the vehicle. In fact, *Curtis*, 537 A.2d at 1076, expressly holds that the owner is not required to take affirmative steps to keep another from driving the car, especially where the owner has no reason to believe that the person would attempt to use the vehicle. *See also Lancaster*, 193 A.2d at 558. It is unreasonable to suggest that a car owner should expressly forbid everyone who might have limited access to his home not to take the car keys he finds in that home and take the car in the driveway. No District of Columbia case has even approached permitting the jury to predicate consent upon the failure of an owner to forbid a person who has access to his home from using his car merely be-

cause there was the potential that that person's access to the car keys might tempt him to take the car.

■ *Familial Relationship Between the Rivases and Iglesiases*—Likewise, the close family relationship between the Rivases and the Iglesiases does not support a presumption of implied consent. While Jorge was the Rivas' nephew, from that familial relationship one can hardly presume consent. It cannot be seriously suggested that the Rivas' request that Jorge mow their lawn while they were abroad included an implicit invitation for Jorge to drive their car. Families differ radically in their closeness, but it strains credulity past any reasonable breaking point to suggest that a person, while traveling abroad, usually has no objection when his underage, unlicensed relative takes his car.

■ *Post–Accident Events*—Deriving consent from events that occur after an accident is a tricky business for the same reason that earthquakes following cock crows does not mean that cock crows cause earthquakes. The inference of pre-event consent to be drawn from the post-event fact must be a reasonable, common-sense deduction. Plaintiffs point to *Curtis*, 537 A.2d at 1076, where an already existing estrangement between a wife and husband corroborated the wife's claim that she had revoked any consent to her husband's use of the car. Here, however, the fact that Jorge's accident did not rupture the Rivas–Iglesias affinity does not materially bolster the plaintiff's claim. Both families knew that Jorge had seriously injured a young man and that Jorge was in serious trouble for what he had done. That the families continued their relationship despite what Jorge did is so understandable that no reasonable person could view it as proof that the Rivases did not object to Jorge's driving the car. Such an argument is *post hoc propter hoc* reasoning at its most illogical.

■ Plaintiffs also point to the fact that Mrs. Rivas declined to press charges against Jorge for unauthorized use of the vehicle. In *Amicar Rentals, Inc. v. Moore*, 294 A.2d 361 (D.C.1972), the court noted that the presumption of consent could be rebutted by the filing of a criminal complaint for unauthorized use. But it is misleading to draw the converse conclusion from the owner's failure to file a criminal complaint. It is entirely understandable that Mrs. Rivas would not want Jorge to face criminal punishment, even if he acted without her consent in driving the vehicle. That they did not tender their nephew to the police so that he might go to jail is so understandable that it borders on the fatuous to see it as "proof" that Jorge had consent to drive the car, let alone compelling the conclusion that, because she did not have her nephew arrested by the police, she must have given him permission to drive the Jetta before the accident.

Finally, in her deposition Mrs. Rivas testified that it never occurred to her to have her nephew formally charged with unauthorized use of the Jetta. Mrs. Rivas's Deposition, at 170–171. It might be one thing to derive some inference of consent from a conscious choice not to have a person arrested for unauthorized use of one's vehicle. It is quite another to draw that inference when there is no evidence of such a conscious choice.

■ *GEICO Disbelief*—The Athridges also point to expressions of skepticism by GEICO claims officials as to Jorge not having permission to drive the Jetta. Shortly after the accident, a GEICO official wrote to a co-worker, "the fact that [Jorge and the Rivases] are cousins should cause us some skepticism about the lack of permission alleged by our insured." Mem-

orandum of J.T. McMahon, GEICO Legal Claims Officer, Plaintiffs' Exhibit 7. Another GEICO employee who interviewed Jorge also expressed doubts as to his purported lack of permission. Memorandum of Linda Smith, GEICO Claims Examiner, Plaintiffs' Exhibit 8. Yet the same documents show that other GEICO officials were more credulous on the permission question. As a whole, these documents show only that there was some disagreement within GEICO as to whether Jorge had the Rivas' consent to use the Jetta. In addition, the GEICO employees were assessing their coverage responsibilities, not interpreting the D.C. liability statute. Their skepticism, by itself, is not nearly enough to send this case to a jury.

■ Moreover, the information proffered in opposition to a motion for summary judgment must be admissible evidence. Under Fed.R.Civ.P. 608(a) one witness may testify as to the credibility of another witness only in the form of an opinion as to latter's character for truth telling. Hence, one witness may not express the opinion that another witness is not telling the truth. *United States v. Azure*, 801 F.2d 336, 340 (8th Cir.1986); *United States v. Earley*, 505 F.Supp. 117 (S.D.Iowa 1981). Under that principle, the statements of GEICO officials to which the Athridges point are not even admissible.

Perhaps the closest factual parallel to this case is *Schwartzbach*, 33 A.2d 624, where the driver took the owner's keys without the owner's knowledge or permission, yet the trial judge found for the plaintiff. On appeal, the D.C. Court of Appeals affirmed. The trial judge found the defendant's testimony unpersuasive and evasive, and subpoenaed the driver to testify. Three key elements distinguish *Schwartzbach* from the instant case. Rather than delineating a firm interpretation of the D.C. statute, the Court empha-

sized that it simply was holding that the trial judge's ruling was not clearly erroneous. *Id.*, at 625. Furthermore, the trial judge's ruling was based chiefly on inconsistencies and self-contradictions in the defendant's testimony. Here, there are no equivocations in the depositions of Jorge, Mr. and Mrs. Rivas, or Francisco Rivas, Jr., regarding whether Jorge was permitted to use the vehicle. All four invariably and unswervingly denied any consent or permission. Finally, whereas in *Schwartzbach* the driver stated that the defendant had allowed her to drive the car on prior occasions, both with him and on her own, here there is no similar evidence of known prior use.

### Summary and Conclusion

Defendants offer uncontradicted and conclusive evidence of the Rivas' non-consent and are therefore entitled to summary judgment. For the reasons stated in this opinion I first conclude that no reasonable finder of fact could determine that Jorge had express or implied consent to drive the Rivas' Jetta on July 29, 1987, and I therefore must grant defendants' motion for summary judgment. I also have to conclude that a reasonable finder of fact would not be compelled to conclude that the Rivases impliedly consented to Jorge's use of the Jetta. I therefore must deny plaintiffs' motion for summary judgment

Accordingly, it is hereby,

**ORDERED** that Defendants' Motion for Summary Judgment [# 147] is **GRANTED.** It is further hereby,

**ORDERED** that Plaintiffs' Motion for Summary Judgment [# 146] is **DENIED.**

A separate order entering final judgment for defendants accompanies this Memorandum.

**SO ORDERED.**

## FINAL JUDGMENT

The motion of the defendants, Francisco Rivas, Hilda Rivas, and Churrascaria Restaurant, for summary judgment having been granted, **IT IS ORDERED THAT** plaintiff take nothing, that the action be dismissed on its merits and that the defendants Francisco Rivas, Hilda Rivas and Churrascaria Restaurant, recover of plaintiff the costs of this action.