Thomas P. ATHRIDGE, Sr.,
et al., Appellants,

v.

Hilda RIVAS, trading as Churreria
Madrid Restaurant, Appellee.

Thomas P. ATHRIDGE, Sr.,
et al., Appellants,

v.

AETNA CASUALTY & SURETY
COMPANY, Appellee.

Thomas P. ATHRIDGE, Sr.,
et al., Appellants,

v.

Jesus IGLESIAS, et al., Appellees.

Thomas P. ATHRIDGE, Sr., Individually
and as Father and Next Friend of Thomas P. Athridge, Minor, Appellant,

v.

Jorge IGLESIAS, et al., Appellees.

Nos. 95–7225 to 95–7228.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 23, 1998.

Decided April 21, 1998.

See also: 950 F.Supp. 1187.

William J. Rodgers argued the cause for appellants. Charles B. Long was on brief.

Paul R. Pearson argued the cause for appellees Jesus and Alicia Iglesias. Irving Starr entered an appearance.

David F. Grimaldi argued the cause for appellees Rivas and Churreria Madrid Restaurant.

Roger W. Heald was on brief for appellee Aetna Casualty & Surety Co.

Before: GINSBURG, HENDERSON and RANDOLPH, Circuit Judges.

KAREN LeCRAFT HENDERSON, Circuit Judge:

Plaintiffs Tommy Athridge (Tommy) and his father Thomas P. Athridge, Jr., appeal the district court's grant of summary judgment to the defendants in a civil action arising from an automobile accident in which Tommy was seriously injured. We affirm the grant of summary judgment to defendants Jesus and Alicia Iglesias and their insurer, the Aetna Casualty & Surety Company (Aetna), and reverse and remand with respect to defendants Francisco and Hilda Rivas and the Churreria Madrid Restaurant for the reasons set forth below.

## I.

On July 29, 1987 defendant Alicia Iglesias sent her 16–year–old son, Jorge, (Jorge) to mow the lawn at the residence (located in the District of Columbia) of his cousins, defendants Francisco and Hilda Rivas, who were out of town at the time. While at the Rivases', Jorge entered their house through an open window, found the keys to the Rivases' manual transmission VW Jetta on a kitchen windowsill and decided to drive the car. The Jetta was registered to Francisco Rivas and to the restaurant he owns, defendant Churreria Madrid Restaurant.

Jorge and his friend, James Ko, drove the Jetta to a local mall where they met up with Tommy, John Thornburg and several other friends at about noon. Jorge drove Tommy, Thornburg and some of the other teenagers to the house of another friend, Erin Rupp, for a pool party. Jorge, Thornburg and Ko left the party in the Jetta an hour later. As Jorge was driving away, however, Thornburg noticed that Tommy's school books were still in the car. Jorge then turned the car around and drove back toward Rupp's house, stopping at a stop sign approximately 440 feet from the house. Jorge then began to accelerate towards the Rupp house. Tommy, who was with a group of people in the Rupp driveway, moved into the street and began waving his arms in an apparent attempt to stop the car. Jorge, however, continued to accelerate towards Tommy, reaching a speed of approximately 40 mph. Tommy remained in the middle of the road. At the last moment, Tommy tried to leap out of the way but Jorge swerved in the same direction. The Jetta struck Tommy and threw him against the windshield. The car then swerved, ran onto a neighbor's lawn, struck a large rock, became airborne and eventually landed in a ravine where it hit two trees. Tommy sustained multiple injuries, including extensive skull fracture and permanent brain injury.

On May 4, 1989 Tommy and his father filed a diversity [1] suit against Jorge (as operator of the vehicle) and Francisco Rivas and Churreria Madrid Restaurant (as registered owners of the vehicle), alleging that Jorge's negligence caused Tommy's injuries. On October 21, 1991 Francisco Rivas and his restaurant moved for summary judgment, asserting that Rivas had not given Jorge permission to drive the car. The plaintiffs opposed the motion on the ground that the "permissive use" issue involved disputed facts and was only one of several bases of liability. On February 24, 1992 the district court denied the motion.

In August 1992 the plaintiffs moved for leave to file an amended complaint and also filed three new actions: (1) one against Hilda Rivas, who was not named in the original action, on theories of agency and negligence; (2) one against Jorge's parents, Jesus and Alicia Iglesias, on theories of agency, negligence and negligent entrustment; and (3) one against Aetna, the Iglesiases' insurer. The district court consolidated the three new actions with the original lawsuit. The Iglesiases then moved for summary judgment and Aetna subsequently joined the motion. The district court set a pretrial conference for October 22, 1992. The parties attended but there is no record of the proceedings. The plaintiffs' counsel maintains that he was instructed by the district court to be prepared at the next hearing, scheduled for November 16, 1992, to "show that they were entitled to get to a jury" by submitting "an opening statement . . . , a proffer of evidence, showing sufficient facts that would entitle them to get to a jury." Plaintiffs' Statement of Proceeding Under Fed. R.App. P. 10(c) at 3; JA 783. According to the plaintiffs' counsel, the court informed him that he need not be prepared on November 16 to establish the facts.

At the November 16 hearing the district court heard arguments by the Iglesiases and Aetna on their joint motion for summary judgment. The court also considered the Rivases' oral motion to dismiss. The plaintiffs' counsel responded by proffering the proposed testimony of Thornburg, who would testify that before the incident Jorge had bragged about having driven cars in the past,

---

**1.** The Athridges are residents of the state of Maryland; the Rivases are residents of the District of Columbia.

including a *Porche* owned by the Rivases. The proffer was oral because, as the Athridges' lawyer explained to the court:

> There is no pending motion for summary judgment as to [the Athridges'] claims on [sic] the Rivases. There has not even been an answer filed on the Hilda Rivas newer case. And I am kind of caught between a rock and a hard place on that one, because had I been opposing a formally filed motion for summary judgment, which I did on a previous occasion, having to do with permissive use—had I been opposing that today, which is not really before the Court, I would have, obviously, been compelled to produce affidavits, testimony or otherwise. I came in under the posture that I am to proffer evidence, which I stand by my proffer of what the evidence will be, but there is no pending motion for summary judgment.
>
> So, consequently—and I have disclosed if I may, because I want to be abundantly clear. I don't want to be thought of as having misled the Court or counsel.
>
> Had I believed that it was in a different posture, then we could have done that, but what we have done today is simply a proffer of evidence. And I have disclosed the existence of these people. This is my work product. And that there are no depositions is not my problem or my fault.

11/16/92 Proceedings Tr. 43:20–44:16.

By order filed July 19, 1995 the district court dismissed the claims against all defendants except Jorge, explaining that

> it is apparent that Jorge Iglesias acted upon a youthful impulse of his own. His relationship to each and every one of the named defendants in these cases was not such as to render any one or more of them vicariously liable for his tortious conduct. He was not driving the car in the service of either his own parents or their relatives, or of the restaurant coincidentally registered as a co-owner of the car. He had no permission to use the car from anyone, express or implied. There is no evidence from which it could be found that any defendant could or should have reasonably foreseen that Jorge would commit a criminal act, much less that an innocent young-

ster far removed from the scene would suffer in consequence.

*Athridge v. Iglesias*, No. 89–1222, slip op. at 2 (D.D.C. filed July 19, 1995).

The plaintiffs appealed and moved for an order settling the record on appeal under Fed. R.App. P. 10(c) in order to summarize the substance of what occurred during the October 22 conference. The Iglesiases and Aetna filed objections. The district court denied the plaintiffs' motion, stating that "the Memorandum and Order of July 19, 1992 granting judgments from which the appeal is taken is self-explanatory" and that "[t]he informal (and inconclusive) pretrial proceedings in chambers of October 22, 1992, played no part in the Court's decision." *Athridge v. Iglesias*, No. 89–1222, slip op. at 2 (D.D.C. filed Apr. 23, 1997).

The case against Jorge proceeded to a bench trial. On November 8, 1996 the district court held, *inter alia*, that Jorge "t[ook] the car without the permission of the owner." *Athridge v. Iglesias*, 950 F.Supp. 1187, 1189 (D.D.C.1996). The court held that Jorge "violated the duty of care to avoid colliding with" Tommy and "was also negligent when he operated at an excessive speed, approximately 40 mph, on a street in a residential neighborhood." *Id.* at 1190. The court found that "this excessive speed was a proximate cause of the collision with plaintiff." *Id.* The court also "conclude[d] on the basis of the evidence that plaintiff was contributorily negligent" since "[a] reasonably prudent person would not stand in the middle of the road when an inexperienced driver is rapidly approaching in a vehicle." *Id.* at 1191. Nevertheless, the district court noted that "[d]espite his contributory negligence, a plaintiff may be permitted to recover under the last clear chance doctrine" and that Tommy was entitled to recover since "[t]here was ample room for [Jorge] to pass [Tommy] on either side, but [Jorge] continued directly towards him." *Id.*

The district court entered judgment for the plaintiffs, awarding Tommy's father $110,010.78 in damages for medical expenses and awarding Tommy damages of $1,400,000 for diminished earning capacity and $4,000,-

000 for pain and suffering. *Id.* at 1194. On June 30, 1997 this Court summarily affirmed the district court, explaining that Jorge "failed to demonstrate that the district court's findings of fact were clearly erroneous." *Athridge v. Iglesias,* No. 96–7261, slip op. at 1 (D.C.Cir. June 30, 1997).

Now before this Court are the Athridges' appeals of the district court's grant of summary judgment to the Iglesiases and their insurer as well as its *sua sponte* grant of summary judgment to the Rivases and the Churreria Madrid Restaurant.

## II.

■ Summary judgment is granted if "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). Our review of a grant of summary judgment is *de novo. Riddell v. Riddell Washington Corp.,* 866 F.2d 1480, 1483–84 (D.C.Cir.1989). "While district courts possess the authority to enter summary judgment against a party *sua sponte,* ... that authority may only be exercised 'so long as the losing party was on notice that she had to come forward with all her evidence.'" *McBride v. Merrell Dow & Pharmaceuticals, Inc.,* 800 F.2d 1208, 1212 (D.C.Cir.1986) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986)).

### A.

■ We first consider the district court's *sua sponte* grant of summary judgment to the Rivases. We reject the Rivases' claim that the Athridges were on notice because of the October 22, 1992 conference. We cannot determine whether such notice was adequate because of the district court's failure to settle the record regarding that conference. Rule 10(c) of the Federal Rules of Appellate Procedure provides:

If no report of the evidence or proceedings at a hearing or trial was made ... the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's

recollection.... Thereupon the statement and any objections or proposed amendments *shall be submitted to the district court for settlement and approval and as settled and approved shall be included by the clerk of the district court in the record on appeal.*

Fed. R.App. P. 10(c) (emphasis added). In addition, our Circuit HANDBOOK OF PRACTICE AND INTERNAL PROCEDURES states:

If no transcript is available, the appellant may prepare and file with the district court a statement of the evidence or proceedings from the best available means, including recollection, and serve it on the appellee. The appellee has ten days to serve objections or proposed amendments in response. *The district court then approves the statement as submitted or amended, and certifies it to this Court as the record on appeal.*

HANDBOOK OF PRACTICE AND INTERNAL PROCEDURES: UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT 36–37 (1997) (emphasis added). While the appellant's decision to move for settlement of the record is discretionary, once the motion is made the district court is obligated to act in accordance with Fed. R.App. P. 10(c) and Circuit procedure. Here, the Athridges properly filed a proposed statement and served it on the appellees. The Iglesiases and Aetna timely filed objections.[2] In its curt denial of the appellants' motion, the district court merely stated that "the Memorandum and Order of July 19, 1992 granting judgments from which the appeal is taken is self-explanatory" and "[t]he informal (and inconclusive) pretrial proceedings in chambers of October 22, 1992, played no part in the Court's decision." *Athridge v. Iglesias,* No. 89–1222, slip op. at 2 (D.D.C. filed Apr. 23, 1997).

■ Whether Rule 10(c) and Circuit procedure were followed is of critical importance in determining if adequate notice was provided to the appellants that they were to come forward with all of their evidence at the November hearing. *See, e.g., McBride,* 800

---

**2.** The record does not reflect that the Rivases objected to the plaintiffs' motion to settle the record.

F.2d at 1212. Moreover, we are not persuaded by the appellees' argument that Fed. R.App. P. 10(c) is inapplicable because the October proceeding cannot be characterized as a "hearing or trial." The purpose of Fed. R.App. P. 10(c) would be thwarted by such a narrow reading. Indeed, "[a]ppellate consideration of the ultimate question in a case must not be frustrated by ... failure to include in the record preliminary proceedings which were in reality part of the trial process, and which might be found to be of vital significance on appeal." *Gatewood v. United States,* 209 F.2d 789, 792 & n. 5 (D.C.Cir. 1953) (explaining this Court's *sua sponte* request that trial court reporter produce transcript of relevant pretrial proceedings "in the interest of both parties, and of the due administration of justice").[3]

What is clear from the record is that (1) Francisco Rivas did not renew his summary judgment motion after his first motion was denied in February 1992, (2) Hilda Rivas, who was added as a defendant after Francisco and the restaurant had moved for summary judgment, did not move for summary judgment and in fact never answered the complaint, (3) the Athridges had no opportunity to depose Hilda or Francisco Rivas because the district court stayed discovery at the October 1992 proceeding[4] and (4) the negligence claims made against the Iglesiases (agency, negligent supervision and negligent entrustment) were different from those asserted against the Rivases (consent) so that the fact that the Iglesiases had filed a summary judgment motion did not adequately place the plaintiffs on notice that summary judgment might be granted *sua sponte* to the Rivases if the Iglesiases prevailed on their motion.

Rule 56 of the Federal Rules of Civil Procedure requires that "a nonmoving party go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(e)); *see also DKT Memorial Fund, Ltd. v. Agency for Int'l Dev.,* 887 F.2d 275, 298 (D.C.Cir. 1989). If the Athridges had known that they faced summary judgment with regard to the Rivases, they could have invoked Fed. R.Civ.P. 56(f) "which allows a summary judgment motion to be denied, or the hearing on the motion to be continued, if the nonmoving party has not had an opportunity to make full discovery." *Celotex,* 477 U.S. at 326, 106 S.Ct. at 2554. Here, however, the court granted summary judgment *sua sponte* in a written order well *after* the hearing—leaving the appellants with no option but to appeal, on an inadequate record, to this Court. The district court erred in granting the Rivases summary judgment *sua sponte* because it is unclear whether the district court afforded the Athridges sufficient notice or "a full opportunity to conduct discovery." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *see also First Chicago Int'l v. United Exch. Co., Ltd.,* 836 F.2d 1375, 1380 (D.C.Cir.1988). Accordingly, we must reverse the summary judgment as to the Rivases and remand to the district court for further proceedings on the plaintiffs' claims against them and the Churreria Madrid Restaurant.

**B.**

By contrast, the Iglesiases moved for summary judgment in September 1992 and the appellants therefore had ample notice of their duty to respond and sufficient time to file a Rule 56(f) motion for additional discovery but did not. The Athridges had advanced three bases of liability against the Iglesiases: (1) negligent supervision because they should have known of Jorge's history of driving without a license; (2) negligent en-

---

**3.** Even assuming the October proceeding was a pre-trial conference but not a "hearing," Fed. R.Civ.P. 16(e) requires "[a]fter any conference held pursuant to this rule, an order shall be entered reciting the action."

**4.** The record suggests that discovery was stayed by the district court on October 22. The plain-

tiffs' assertion that the district court informed the parties on October 22 that "no discovery or further discovery would be allowed to anyone pending the Court's further rulings," JA 784, was not challenged by the Iglesiases or by Aetna in their responses to the plaintiffs' Rule 10(c) motion. *See* JA 784–85, 791–93, 811–15.

trustment based on their having placed Jorge in a position with access to car keys; and (3) agency because the instruction to "mow the lawn" created an employer-employee relationship. None of their claims has merit.

▇ First, the Iglesiases are not liable for "breach of duty to supervise" as the cases cited by the appellants themselves demonstrate. For example, in *Bateman v. Crim,* the District of Columbia Court of Appeals explained that parents are liable for the acts of their children "where the parent has permitted a minor to use a dangerous instrumentality, or where they have knowingly permitted, encouraged, or failed to discourage, conduct inherently dangerous to others or prohibited by laws intended to promote public safety." 34 A.2d 257, 258 (D.C.1943). In *Bateman,* however, the court rejected the plaintiff's "claim[ ] that a lack of supervision, without evidence of prior conduct requiring the exercise of parental restraint, renders a parent responsible for acts of a minor which with greater supervision would not have occurred" because "the evidence does not show that the conduct of the minors prior to the instant occurrence was such that their parents, with closer supervision, would have been aware that they were engaging in conduct which was unlawful or which might inflict injury upon others." *Id.* at 258.

▇ Here the Athridges similarly failed to demonstrate that Jorge's parents were "aware that [Jorge was] engaging in conduct which was unlawful or which might inflict injury upon others." *Id.* They offered no evidence that Jorge's parents knew that he had driven before the day of the accident. They offered no evidence that the Iglesiases knew that Jorge had access to the Rivases' house or car; rather, the evidence indicated that the Rivases were out of town and that the house would therefore be locked. We reject their assertion that Jorge drove well enough to raise an inference that the Iglesiases were aware that he could drive. Finally, the fact that Jorge knew how to drive, and, according to the plaintiffs, had driven a motorcycle, is insufficient to support an inference that Jorge's parents should have known that Jorge could also drive a car. Moreover, this evidence does not support an inference

that Jorge had driven recklessly on any earlier occasion or that his parents knew about any such recklessness. In sum, "to render a parent responsible for injuries resulting from the wrongful acts of a minor, his negligence in the exercise of parental supervision must have some specific relation to the act complained of, which is lacking in the present case." *Id.*

▇ We also affirm the grant of summary judgment to the Iglesiases on the negligent entrustment claim. The Restatement of Torts provides:

> It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.

Restatement (Second) of Torts § 308. This section applies only if the third person is "entitled to possess or use the thing or engage in the activity only by the consent of the actor." *Id.* comment a. Here the plaintiffs offered no evidence that the Iglesiases had control of the Rivases' car or that the Iglesiases authorized their son to use it. Further, there was no evidence presented that they knew Jorge would have access to a car or to car keys.

▇ Finally, the Iglesiases are not liable under the theory that Jorge was acting as their employee. The Restatement of Torts provides:

> A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if (a) the servant (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or (ii) is using a chattel of the master, and (b) the master (i) knows or has reason to know that he has the ability to control his servant, and ▇ knows or should know of the necessity

and opportunity for exercising such control.

*Id.* § 317; *see also International Distrib. Corp. v. American Dist. Tel. Co.,* 569 F.2d 136, 139–40 (D.C.Cir.1977) (holding security company liable for its employees' theft at business where it provided security).

Although the record is somewhat unclear whether Jesus Iglesias operated a lawnmowing business, the plaintiffs produced no evidence that Jorge mowed the Rivases' lawn as part of any business. Indeed, there is no evidence that Jorge's father directed him to mow the lawn; instead, Mrs. Iglesias gave the order. Nor is there any evidence that Jorge was using a chattel of his father. Finally, as with the negligent supervision claim, Jorge's history as a driver was not sufficient to infer that the Iglesiases should have known of the need to supervise Jorge.[5]

### III.

For the foregoing reasons, we reverse the grant of summary judgment to the Rivases and to the Churreria Madrid Restaurant, affirm the grant of summary judgment to the Iglesiases and Aetna and remand for further proceedings consistent with this opinion.

*So ordered.*

**5.** While the plaintiffs rely on *Giese v. Montgomery Ward, Inc.,* 111 Wis.2d 392, 331 N.W.2d 585 (1983), where the father's instruction to "mow the lawn" was sufficient to create an employer- employee relationship, we find that case easily distinguishable in that there the lawn was located next to the father's tavern.