Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Argued October 21, 2003  Decided December 9, 2003

No. 02-7134

Thomas P. Athridge and Thomas P. Athridge, Jr.,
APPELLANTS

v.

Aetna Casualty & Surety Co.,
APPELLEE

————

Appeal from the United States District Court
for the District of Columbia
(No. 96cv02708)

————

*Erik S. Jaffe* argued the cause and filed the briefs for appellants.

*Geoffrey H. Genth* argued the cause for appellee. With him on the brief was *Lee H. Ogburn*.

————

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before: GINSBURG, *Chief Judge*, and EDWARDS, *Circuit Judge*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*: This case is one of many arising out of a 1987 automobile accident in which Jorge Iglesias, driving a car owned by his aunt and uncle, struck and severely injured Thomas P. Athridge. Here Athridge and his father have sued Aetna Casualty and Surety Company, insurer of Jorge's parents at the time of the accident, both in the Athridges' own right and as Jorge's assignees. See *Athridge v. Iglesias*, 950 F. Supp. 1187, 1194 (D.D.C. 1996) (ordering Jorge to convey to the Athridges his chose-in-action assets). The Athridges claim (1) indemnification under the auto insurance policy between Aetna and the Iglesiases; (2) bad faith violation of certain duties and of the covenant of good faith and fair dealing; and (3) misrepresentations and omissions under the District of Columbia Consumer Protection Procedures Act ("Consumer Protection Act"), D.C. Code § 28–3905(k)(1).

The magistrate judge granted summary judgment in Aetna's favor on all counts. In his first order he found that Aetna's actions did not constitute bad faith. *Athridge v. Aetna Cas. & Sur. Co.*, No. CIV.A. 96–2708, 2001 WL 214212, at *5–12 (D.D.C. March 2, 2001). In his second he found that Jorge was excluded from coverage under Aetna's insurance policy, and therefore that the Athridges could not maintain an indemnification claim. *Athridge v. Aetna Cas. & Sur. Co.*, 163 F. Supp. 2d 38, 48 (D.D.C. 2001). And he rejected the Athridges' claim under the Consumer Protection Act. *Id.* at 55–56. The Athridges argue that the magistrate judge erred in all of these rulings.

Because there is a factual issue relating to whether Aetna's policy exclusion applies to Jorge, the magistrate judge incorrectly granted summary judgment on the Athridges' indemnification claim. We therefore reverse and remand on that claim. We affirm the magistrate's grants of summary judgment on the Athridges' bad faith and Consumer Protection

Act claims (the latter on grounds different from the magistrate's).

* * *

We have already described both the underlying facts and the procedural history of this case in some detail. See *Athridge v. Rivas*, 141 F.3d 357, 359–60 (D.C. Cir. 1998) ("*Rivas I*"); *Athridge v. Rivas*, 312 F.3d 474, 475–77 (D.C. Cir. 2002) ("*Rivas II*"). Facts will be developed here as necessary to resolve specific issues.

* * *

*Indemnification*

Aetna asserts two grounds why we should affirm the magistrate judge's grant of summary judgment on the Athridges' indemnification claim. Aetna first argues that issue and claim preclusion bar the claim. Alternatively, Aetna argues that the magistrate correctly found that Jorge's accident wasn't covered by Aetna's insurance policy because the policy excluded any "person using a vehicle without a reasonable belief that the person is entitled to do so." We reject the preclusion theories (which if correct would have completely disposed of the issue). On the merits, we affirm the magistrate's interpretation of the policy exclusion, but remand because there are material facts in dispute as to whether that exclusion, so construed, applies.

*Preclusion.* Aetna brought a declaratory judgment action against Jorge in the District of Columbia Superior Court in 1990, seeking and receiving a determination that Aetna's exclusion in fact applied. Here Aetna argues that under principles of issue preclusion this judgment bars the Athridges, as Jorge's assignees, from seeking indemnification. See, e.g., *Yamaha Corp. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992) (stating issue preclusion standard). But at oral argument Aetna conceded that the Athridges, as judgment creditors of Jorge, have a claim for indemnification in their own right, not just as Jorge's assignees. See generally Eric

Mills Holmes, *Holmes's Appleman on Insurance 2d* § 112.10, at 339 (2d ed. 2000). Because the Athridges were not parties to the Superior Court action between Jorge and Aetna, that action cannot bar the Athridges from litigating coverage in the indemnification claim they pursue in their own right.

Aetna's claim preclusion theory rests on the Athridges' 1992 losing suit against Aetna, as the Iglesiases' insurer, under the Diplomatic Relations Act. See 28 U.S.C. § 1364 (allowing direct suit against the insurers of certain diplomatic personnel); *Rivas I*, 141 F.3d at 358 (affirming grant of summary judgment in Aetna's favor). Aetna argues that in this suit the Athridges could have sought a declaratory judgment that Jorge was covered by Aetna's insurance policy. See *Aetna Cas. & Sur. Co. v. State Farm Mut. Auto. Ins. Co.*, 380 A.2d 1385, 1386–87 (D.C. 1977) (allowing declaratory judgment actions as to policy coverage before liability has been determined). Because claim preclusion bars claims that a litigant might have raised in prior litigation, see, e.g., *Drake v. FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002), Aetna argues that the Athridges' failure to contend that Jorge's conduct was covered by the policy bars them from doing so here.

In response, the Athridges argue that Aetna's policy contained a "no-action" clause that would have prevented them from seeking a declaratory judgment before Jorge's liability was established. See Aetna auto insurance policy, at Joint Appendix ("J.A.") 23 ("[N]o legal action may be brought against us until . . . the amount of that obligation has been finally determined by judgment after trial."). While the preclusive effect of federal court litigation is a question of federal law, see 17 Charles Alan Wright et al., *Federal Practice and Procedure* § 4226, at n.10 (2d ed. 1988), the meaning and effect of the no-action clause depend on District of Columbia law in this diversity action. See, e.g., *Messina v. Nationwide Mut. Ins. Co.*, 998 F.2d 2, 4 (D.C. Cir. 1993) (per curiam).

Maryland law, to which the District commonly looks for guidance in the absence of its own precedents, see *Conesco Indus. Ltd. v. Conforti & Eisele, Inc.*, 627 F.2d 312, 315 (D.C.

Cir. 1980), provides some support for Aetna's position. While Maryland has a rule barring an injured claimant from bringing a direct action against the tortfeasor's liability insurer before a verdict on liability is rendered (evidently a public policy equivalent of Aetna's no-action clause), it makes an exception for declaratory judgment actions "concerning separate and independent policy coverage issues." *Harford Mut. Ins. Co. v. Woodfin Equities Corp.*, 687 A.2d 652, 658 (Md. 1997). A court in the District might regard the policy's no-action provision as similarly allowing a pre-judgment lawsuit on the coverage issue, which here is wholly independent of liability.

But a party invoking claim preclusion has the burden of establishing its elements, *Gen. Elec. Co. v. Deutz Ag*, 270 F.3d 144, 158 (3d Cir. 2001), and there are at least two potential holes in Aetna's theory. First, assuming the District were to follow *Harford*, it might regard a specific contract bar as more compelling than a judge-made rule of policy, and thus be less ready to create an exception for declaratory judgments on separate and independent issues. Second, there is at least a hint in District law of resistance to pre-judgment suits by the injured claimant against an insurer: in *Donaldson v. Home Indemnity Co.*, 165 A.2d 492 (D.C. 1960), the court rejected an insurer's claim preclusion theory where the tortfeasor had unsuccessfully litigated his indemnification right through a third-party claim in the plaintiff's suit against him. The court said, without explanation, that the plaintiff "did not and could not bring the insurance company into the case." *Id.* at 493–94. Given these uncertainties, Aetna has not met its burden of proving that the Athridges could have brought a declaratory judgment action in 1992, and we therefore must reject Aetna's claim preclusion defense.

*The interpretation of Exclusion 11.* Their indemnification claim having survived Aetna's preclusion defense, the Athridges argue that the magistrate judge erred in finding that Jorge was excluded from coverage under Exclusion 11 of the policy. The Athridges argue that the magistrate misinterpreted the exclusion, which provides that Aetna

do[es] not provide Liability Coverage: ... For any person using a vehicle without a reasonable belief that the person is entitled to do so.

J.A. 18. The Athridges argue that the policy distinguishes for some purposes between "family members" of the policyholder and "any person using your auto," J.A. 17; extending that distinction to Exclusion 11, they say that Jorge, as a "family member," is not covered by its "any person" language. We disagree.

While the Athridges cite some cases supporting the distinction between an insurance policy's use of the phrase "family member" and its use of the phrase "any person," see *AIG Hawaii Ins. Co. v. Smith*, 891 P.2d 261, 270 (Hawaii 1995) (stating that "the selective use of the terms 'any person' and 'family member' ... creates mutually exclusive classes"); *United Servs. Auto. Ass'n v. Dunn*, 598 So.2d 1169, 1170 (La. Ct. App. 1992) (same); *Am. States Ins. Co. v. Adair Indus., Inc.*, 576 N.E.2d 1272, 1275 (Ind. App. 1991) (same), none of those cases is binding on the District of Columbia courts, and they appear to represent the minority view on this issue. See, e.g., *Hartford Ins. Co. of the Midwest v. Halt*, 646 N.Y.S.2d 589, 591–93 (N.Y. App. Div. 1996) (discussing relevant cases and finding that the "vast majority of courts considering the issue ... hold that 'any person' means exactly that, necessarily including any 'family member' ").

Perhaps recognizing that problem, the Athridges assert that the split in the case law requires us to find that the contract provision at issue is ambiguous, and argue that under District of Columbia law such an ambiguity should be resolved in their favor. See *Unklesbee v. Homestead Fire Ins. Co.*, 41 A.2d 168, 169 (D.C. 1945) ("A contract of insurance is to be construed liberally in favor of the insured and strictly as against the insurer.").

We find no ambiguity in the term "any person," except in the sense that clever lawyers with strong motivation can always imagine multiple meanings for any word in any context. That is not enough under District of Columbia law. In the District, courts "are to give the words used in an insur-

ance contract 'their common, ordinary, and . . . popular meaning.' " *Quadrangle Dev. Corp. v. Hartford Ins. Co.*, 645 A.2d 1074, 1075 (D.C. 1994) (citation omitted). Courts should not seek out ambiguity where none exists. *Medical Serv. of Dist. of Columbia v. Llewellyn*, 208 A.2d 734, 736 (D.C. 1965). Here, "any person" is unambiguous and necessarily includes the named insured and his family members, including Jorge. Compare *Smalls v. State Farm Mut. Auto. Ins. Co.*, 678 A.2d 32, 35 (D.C. 1996) (finding policy exclusion for "any bodily injury to . . . any insured or any member of insured's family" clear and unambiguous) (emphasis omitted); *Halt*, 646 N.Y.S.2d at 591 ("The vast majority of courts considering the issue . . . hold that, because the term 'any person' is unambiguous and has no technical or otherwise restricted definition in the policy itself, it should be accorded its common meaning.").

Accordingly we find that Exclusion 11 of Aetna's policy would indeed exclude Jorge's behavior from coverage if at the time of the accident he was "using [the] vehicle without a reasonable belief" that he was entitled to do so.

But the Athridges argue that a factual controversy exists over whether Jorge had such a "reasonable belief" at the time of the accident, precluding the grant of summary judgment. We have already found in a previous appeal that the evidence submitted by the Athridges in that case—which is the same as they submit here—was enough to create a jury question as to whether Jorge had consent to use the car on the day of the accident. See *Rivas II*, 312 F.3d at 478 (discussing evidence). If he had consent, he almost certainly had a reasonable belief in his entitlement to use the car. We thus reverse the magistrate judge's grant of summary judgment on the Athridges' indemnification claim.

*Bad faith*

The Athridges also argue that the magistrate judge erred in granting summary judgment in Aetna's favor on their claim of Aetna's bad faith violation of the duties of candor and due care, and of the covenant of good faith and fair dealing. As Jorge's assignees, the Athridges argue that Aetna acted in bad faith by: (1) failing to appoint independent counsel to

represent Jorge in the District of Columbia Superior Court declaratory judgment proceeding; (2) twice in the liability proceeding between Jorge and the Athridges providing Jorge with temporary counsel that favored Aetna's interests over Jorge's; and (3) failing to affirmatively seek a settlement between Jorge and the Athridges. We again turn to District of Columbia law to analyze these claims.

*Independent counsel claim.* The Athridges acknowledge that Aetna was within its rights to bring a suit for declaratory judgment against Jorge. See, e.g., *Smalls*, 678 A.2d at 34; *Cent. Armature Works, Inc. v. Am. Motorists Ins. Co.*, 520 F. Supp. 283, 288 (D.D.C. 1980). But they argue that Aetna had a duty to appoint counsel to defend Jorge in that suit, even though Jorge already had his own counsel. The parties address this claim under an apparent assumption that it would have survived the Superior Court's finding against Jorge that Aetna's insurance policy excluded him from coverage for the accident at issue. We, too, proceed under that assumption, without resolving it.

The Athridges point to three cases supposedly supporting their theory. *Mut. Serv. Cas. Ins. Co. v. Luetmer*, 474 N.W.2d 365, 369 (Minn. App. 1991); *Miller v. Shugart*, 316 N.W.2d 729, 733 (Minn. 1982); *Nat'l Gen. Ins. Co. v. Ozella*, 307 N.E.2d 745, 749 (Ill. App. 1974). These cases are not binding on District of Columbia courts, and are in any event easily distinguished. *Ozella* did not find any duty to provide its insured with a lawyer in the company's declaratory judgment action against him, but merely upheld a trial court decision, "in the interest of justice," that the indigent insured defendant should be represented at trial, and taxing the attorneys' fees to the plaintiff insurance company. *Ozella*, 307 N.E.2d at 749. In justifying this decision, the Illinois appeals court relied on a case holding that a primary insurer, rather than the excess insurer, was responsible for defending a suit against its client. See *id.* (citing *Fireman's Fund Indem. Co. v. Freeport Ins. Co.*, 173 N.E.2d 543, 546 (Ill. App. 1961)). Even ignoring its reliance on an off-point case, *Ozella* does not support the Athridges' proposition. Jorge was represented by an attorney in the declaratory judgment

action brought by Aetna. The Athridges are not claiming that Aetna should pay Jorge's attorney's fees; instead, they are claiming that Aetna should have provided Jorge additional counsel, separate from the one his family had already hired for him.

*Shugart* is similarly off-point. There, the insurance company brought a declaratory judgment action against the insured as to the scope of the policy, "appropriately providing another set of attorneys to defend the insureds" in that action. 316 N.W.2d at 733. The focus of the case was the avoidance of conflicts of interest among counsel in insurance cases. The quoted phrase is pure dictum, and apparently offhand dictum at that.

Finally, in *Luetmer*, the Minnesota court of appeals said, "Clearly, if the insurer seeks a declaratory judgment, it should provide its insured with separate counsel." 474 N.W.2d at 369 (citing *Shugart*). This was also dictum, as *Luetmer* was considering the question of when there is enough of a conflict of interest between the insured and the insurer, in a suit by the victim against the insured, to justify the insured's demand that the insurer pay the fees of counsel hired by the insured. A dictum mis-citing another dictum is pretty feeble support for the Athridges' theory.

Finding no basis for supposing that District law imposes a requirement that an insurer provide an already represented insured with additional counsel in a declaratory judgment action on the scope of the policy, we affirm the magistrate and reject the Athridges' independent counsel claim.

*Conflict of interest claim.* Aetna twice provided Jorge with temporary counsel during the liability proceeding in which the Athridges were ultimately awarded a $5.5 million judgment against Jorge. See *Athridge v. Iglesias*, 950 F. Supp. 1187, 1194 (D.D.C. 1996). The Athridges claim that the counsel provided by Aetna pursued Aetna's interests rather than Jorge's. While the Athridges do not characterize all these allegations as legal malpractice claims, their arguments are based on the premise that Aetna's attorneys violated a duty owed to Jorge. This sounds much like a claim of legal

malpractice. More important, for purposes of the District's requirement of expert evidence to support any non-obvious malpractice claim (discussed below), any claim arising out of the conflict of interest alleged here is similar to legal malpractice claims in the key dimension: the factors to be balanced are obviously not common knowledge.

To establish legal malpractice in the District of Columbia, "a plaintiff must establish the applicable standard of care, a breach of that standard, and a causal relationship between the violation and the harm complained of," *Mills v. Cooter*, 647 A.2d 1118, 1123 (D.C. 1994), and "[u]nless the attorney's lack of care is so obvious that the jury can find negligence as a matter of common knowledge, the standard and its violation must be proved by expert testimony," *id.* The Athridges presented no expert testimony as to the applicable standard of care or its violation. See *Athridge v. Aetna Cas. & Sur. Co.*, No. CIV.A. 96–2708, 2001 WL 214212, at \*10 (D.D.C. March 2, 2001). Thus the question is whether a jury could reasonably find, as a matter of common knowledge, that Aetna's attorneys acted negligently toward Jorge. It could not.

The Athridges' first theory is that the Aetna-provided attorneys "intentionally delayed the damages trial so that Aetna could obtain its declaratory judgment and not have to defend during the period of uncertainty regarding coverage." But it was potentially in Jorge's interest that the damages trial be continued pending Aetna's action for a declaratory judgment. As the motion for continuance itself pointed out, "should the Superior Court conclude that coverage and a defense through Aetna is appropriate, it is anticipated that the possibility of a settlement in this case will be greatly enhanced." J.A. 129. In fact, a lawyer who was hired by Jorge's family and who represented him throughout the Athridges' lawsuit against Jorge was also on the motion for a continuance (though his name was evidently signed by another attorney, J.A. 130); his participation undercuts any idea that the motion clearly manifested undue loyalty to Aetna. Thus, even if expert testimony established that the delay of the damages trial was a breach of duty, it was not so obvious

a breach that a jury could find liability as a matter of common knowledge.

The Athridges also argue that the second attorney provided by Aetna to Jorge defended him only on liability and ignored damages. Had Aetna been responsible for Jorge's defense, failure to argue damages would seem an obvious breach of duty. As Aetna points out, however, it was not responsible for Jorge's defense, a fact that Jorge knew: Aetna received the favorable declaratory judgment in 1991, and the damages trial did not start until 1996. See *Athridge v. Iglesias*, 950 F. Supp. 1187, 1194 (D.D.C. 1996). In this context, any Aetna contribution to Jorge's defense seems like a windfall benefit for Jorge—at least without an allegation that Aetna, Svengali-like, talked Jorge's lawyers out of a better defense. Even if expert testimony established that the conduct of Aetna's lawyer somehow constituted a breach of duty, however, the fact that Aetna had no duty to defend Jorge on either damages or liability shows that it is not so obvious a breach that a jury could find negligence as a matter of common knowledge.

*Settlement claim.* The third of the Athridges' bad faith claims arises from Aetna's alleged failure to seek settlement between Jorge and the Athridges. Even if this claim has some basis in fact, compare J.A. 193 (letter from Athridges' attorney to Irving Starr offering to settle for chose-in-action assets) with J.A. 321–22 (magistrate judge's finding that he has never seen even a hint that the Athridges would have settled their case against Jorge), it fails because Aetna had no legal obligation to seek a settlement between Jorge and the Athridges following the 1991 declaratory judgment stating that Jorge was not covered under Aetna's insurance policy. Compare *Kremen v. Maryland Auto Ins. Fund*, 770 A.2d 170, 181 (Md. 2001) (finding bad faith failure to settle in a case where there was no dispute that insured was covered by insurance policy). Again, even if expert testimony could establish that this failure to seek a settlement somehow constituted a breach of duty, this was not so obvious a breach that a jury could find negligence as a matter of common knowledge.

*Consumer Protection Act*

The Athridges' final argument on appeal is that the magistrate judge erred by granting summary judgment in Aetna's favor on their claims under the District of Columbia Consumer Protection Procedures Act ("Consumer Protection Act"), D.C. Code § 28–3905(k)(1). The magistrate found that the Athridges could not maintain such a claim because Jorge was not a "consumer" within the meaning of the Act, because Aetna's potential coverage of Jorge was not a "trade practice" under the Act, and because Jorge did not suffer damages sufficient to sustain an action for a violation of the Act. *Athridge v. Aetna Cas. & Sur. Co.*, 163 F. Supp. 2d 38, 55–56 (D.D.C. 2001). While we agree with the Athridges that the magistrate judge misinterpreted the Consumer Protection Act, we affirm the grant of summary judgment on the ground that Aetna's alleged material misrepresentations or omissions could not, as a matter of law, have had a tendency to mislead. See *Alicke v. MCI Communications Corp.*, 111 F.3d 909, 912 (D.C. Cir. 1997) (affirming grant of summary judgment on Consumer Protection Act claims because defendant's actions could not have misled consumer).

It is a violation of the Consumer Protection Act for any person to misrepresent a material fact which has a tendency to mislead or to fail to state a material fact if such failure tends to mislead, whether or not a consumer is in fact misled, deceived or damaged thereby. D.C. Code §§ 28–3904(e)-(f). The Act defines a consumer as "a person who does or would purchase, lease (from), or receive consumer goods or services, . . . or a person who does or would provide the economic demand for a trade practice." D.C. Code § 28–3901(a)(2). And it defines a trade practice as "any act which does or would create, . . . make available . . . or effectuate, a sale, lease or transfer, of consumer goods or services." D.C. Code § 28–3901(a)(6). Finally, "goods and services" are "any and all parts of the economic output of society, at any stage or related or necessary point in the economic process, and includes consumer credit, franchises, business opportunities, real estate transactions, and consumer services of all types." D.C. Code § 28–3901(a)(7).

These definitions make clear that Jorge, as a person potentially insured by Aetna's policy with the Iglesiases, is a person who "would . . . receive consumer goods or services," and as such is a "consumer" for purposes of the Act, even if he was not the party who purchased the insurance. Similarly, because Aetna's insurance contract could effectuate the transfer of consumer services to Jorge, the contract between Aetna and the Iglesiases is a "trade practice," even if Jorge was not a party to the contract. See also *Banks v. District of Columbia Dep't of Consumer & Regulatory Affairs*, 634 A.2d 433, 437 (D.C. 1993) (discussing "trade practices" under the Act).

While the Act's coverage of Jorge and his relation to Aetna seems clear, we have doubts about the magistrate's alternative holding that Jorge did not suffer damages sufficient to sustain an action for a violation of the Act. While the Athridges are right that a misrepresentation can be a violation of the Act even if the consumer is not harmed, D.C. Code § 28–3904, a court action (as opposed to administrative measures) requires a showing of damages. *Osbourne v. Capital City Mortgage Corp.*, 667 A.2d 1321, 1329–30 (D.C. 1995). But the magistrate's conclusion that none of the supposed misrepresentations could have injured Jorge, because he was "an impecunious high school dropout" who "never paid a penny" of the $5.5 million judgment against him and "has now been discharged in bankruptcy," *Athridge v. Aetna Cas. & Sur. Co.*, 163 F. Supp. 2d at 56, is an oversimplification. In the context where this issue most often arises, claims of bad faith failure to settle, there is a split in the law: under the so-called "judgment rule," the insurer is liable for the full excess of the judgment over the policy limits; under the "payment rule," in the case of an insolvent judgment debtor, damages are commonly limited to the debtor's net assets. See *Gray v. Grain Dealers Mut. Ins. Co.*, 871 F.2d 1128, 1131–32 (D.C. Cir. 1989); *Medical Mut. Liab. Ins. Soc. v. Evans*, 622 A.2d 103, 114–16 (Md. 1993); see also *Gray*, 871 F.2d at 1131–32 n.5 (discussing some variations). As we noted in *Gray*, not all of the states embracing the judgment rule have considered the case of an insolvent insured. We note that Maryland

(whose case law the District commonly follows) is among those jurisdictions following the judgment rule, *Evans*, 622 A.2d at 114–16, though not without qualms. We will assume arguendo that under the Act the District would follow the judgment rule; even apart from that, the Athridges have failed to state a claim under the Act.

Broad as the Act is, it requires a representation or omission that would "tend to mislead." D.C. Code § 28–3904(e). Aetna's alleged material misrepresentations or omissions could not, as a matter of law, have had such a tendency. All of them relate to an advocate's traditional presentation of his client's side in litigation. See Amended Complaint, at J.A. 231–38 (alleging, for example: that Aetna's attorney expressly represented to the district court that Aetna's declaratory action would have a substantial impact upon the Athridges' claims, while Aetna had no intention of naming the Athridges as parties to its declaratory judgment action; that Aetna did not comply with District of Columbia Superior Court Rule 19(c), which requires disclosure of the existence of necessary parties with an explanation of why such parties were not joined; that Aetna falsely represented to the Superior Court that the Iglesiases were citizens of the District of Columbia, when it knew or should have known that they were citizens of Spain; that Aetna failed to disclose facts that suggested the Superior Court might not have subject matter jurisdiction; and that Aetna failed to disclose to Jorge that he was entitled to remove the declaratory action to federal court). If these statements were actionable under the Consumer Protection Act, either adversary litigation would be completely transformed, or every lawsuit would spawn two more lawsuits, each of them in turn spawning two lawsuits, ad infinitum. We cannot imagine that the District of Columbia legislature intended such a result, and therefore affirm the magistrate's dismissal of these counts.

\* \* \*

For the reasons stated above, the magistrate judge's decision is reversed and remanded for further proceedings relat-

ing to the disputed issue of Jorge's "reasonable belief" at the time of the accident. The judgment is otherwise affirmed.

*So ordered.*