# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued October 3, 2008        Decided November 14, 2008

No. 07-5255

DELARSE MONTGOMERY, JR.,
APPELLANT

v.

ELAINE L. CHAO, CHAIRWOMAN, PENSION BENEFIT
GUARANTY CORP. AND BRADLEY B. BELT, EXECUTIVE
DIRECTOR, PENSION BENEFIT GUARANTY CORP.,
APPELLEES

---

Appeal from the United States District Court
for the District of Columbia
(No. 05cv02157)

---

*David H. Shapiro* argued the cause for appellant. With him on the briefs was *Alana M. Hecht*.

*Jane M. Lyons*, Assistant U.S. Attorney, argued the cause for appellees. With her on the briefs were *Jeffrey A. Taylor*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney. *Karen L. Melnik*, Assistant U.S. Attorney, entered an appearance.

Before: HENDERSON, RANDOLPH, and GARLAND, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*: DeLarse Montgomery challenges the district court's grant of summary judgment against him on his claims of employment discrimination and retaliation by the Pension Benefit Guaranty Corporation (PBGC). Because we find that no reasonable jury could conclude that the PBGC's decisions not to promote and not to appoint Montgomery resulted from discriminatory or retaliatory animus, we affirm the judgment of the district court.

I

Appellant Montgomery is an African-American male who began working at the PBGC in 1986.[1] His first position was as a secretary at the GS-5 grade level. In 1987, he became a Management Analyst. By 1992, after a series of promotions, he had become a Financial Specialist at the GS-11 level. After receiving his promotion to GS-11, Montgomery filed a complaint of race discrimination, which was settled in 1998. The settlement gave him a promotion to a GS-12 Financial Specialist position in the Investment Accounting Branch of the PBGC's Financial Operations Department.

Montgomery's direct supervisor in the Investment Accounting Branch was Cynthia Adams, an African-American female. In March 2002, Adams assigned Montgomery to perform Contracting Officer Technical Representative (COTR) duties for the PBGC's contract with Bert Smith Professional Services, a firm that performed accounting work on pension

---

[1]The PBGC is a U.S. government corporation within the Department of Labor that insures private-sector defined-benefit pension plans. *See* 29 U.S.C. § 1302; *Boivin v. U.S. Airways, Inc.*, 446 F.3d 148, 150 (D.C. Cir. 2006).

plans under contract with the PBGC. Soon thereafter, Montgomery asked Adams to update his position description to include the COTR duties, and in April 2003, he formally requested a promotion to grade GS-13 based on accretion of duties -- namely, the COTR duties that Adams had assigned to him. On September 9, 2003, Adams notified Montgomery that his requested accretion-of-duties promotion had been denied. On October 1, 2003, Montgomery filed a formal Equal Employment Opportunity (EEO) administrative complaint alleging that the PBGC's denial of his request for an accretion-of-duties promotion to GS-13 resulted from race, gender, and age discrimination.

In response to the EEO complaint, the PBGC ordered a desk audit of appellant's position to determine its proper GS level. Cynthia Kyle, a Human Resources contractor, conducted the desk audit, which included interviews of both Montgomery and Adams as well as review of documentation regarding Montgomery's responsibilities. The desk audit indicated that the job was in fact a GS-11 position. The audit also found that COTR duties are not usually "grade-controlling," and that for such duties to affect Montgomery's grade, "he would have to possess the qualifications to 'oversee' the work from a completely 'technical' aspect or be an Accountant." J.A. 379.

While the EEO complaint was pending, Montgomery applied for a GS-12/13 Accountant position. The PBGC instead selected Lafaye Graham, an African-American female with a bachelor's degree in finance, a master's degree in accounting, and fifteen years of experience in accounting, including investment accounting -- a qualification mentioned in the vacancy announcement. In response to his failure to receive the Accountant position, Montgomery filed a second EEO complaint in late 2004, claiming both discrimination and retaliation.

After filing the second EEO charge, Montgomery applied for a GS-13 Collections Analyst position, which was advertised under both a status and a non-status vacancy announcement.[2] Montgomery alleges that he applied under both vacancy announcements, but the PBGC asserts that it only received the non-status application. The PBGC hired a candidate from the status list to fill the position and therefore cancelled the non-status vacancy announcement without considering applicants, including Montgomery, who were on the non-status list. After failing to obtain the Collections Analyst position, Montgomery filed his third EEO complaint, again alleging both discrimination and retaliation.

On November 3, 2005, Montgomery filed suit in the U.S. District Court for the District of Columbia. Montgomery charged that, in denying him the promotion and positions just described, the PBGC had discriminated and retaliated against him in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. On June 26, 2007, the district court granted the PBGC's motion for summary judgment on all of Montgomery's claims. This appeal followed.

## II

We review the district court's grant of summary judgment de novo. *Waterhouse v. Dist. of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). Summary judgment is appropriate only if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). We must view the evidence in the light most

---

[2] "A status applicant is one who has 'competitive status within the government' and does not have to 'recompete' for the position." *Montgomery v. Chao*, 495 F. Supp. 2d 2, 9 (D.D.C. 2007).

favorable to the nonmoving party, draw all reasonable inferences in his favor, and eschew making credibility determinations or weighing the evidence. *Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (en banc).

Title VII prohibits the federal government from discriminating in employment on grounds of race or sex, 42 U.S.C. § 2000e-16, and from retaliating against employees for engaging in activity protected by Title VII, *see Forman v. Small*, 271 F.3d 285, 297 (D.C. Cir. 2001); *Ethnic Employees of the Library of Cong. v. Boorstin*, 751 F.2d 1405, 1415 & n.13 (D.C. Cir. 1985). *See also Lathram*, 336 F.3d at 1088. Where the plaintiff's evidence of discrimination (or retaliation) is circumstantial, the familiar *McDonnell Douglas* framework applies. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973); *Lathram*, 336 F.3d at 1089 n.3. Under that framework, a plaintiff "must [first] establish a prima facie case of discrimination." *Reeves*, 530 U.S. at 142. Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to produce a "legitimate, nondiscriminatory reason" for its actions. *Id.* (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)); *McDonnell Douglas*, 411 U.S. at 802. Where, as here, the defendant produces such a reason, "'the *McDonnell Douglas* framework -- with its presumptions and burdens' -- disappear[s], and the sole remaining issue [is] 'discrimination *vel non*.'" *Reeves*, 530 U.S. at 142-43 (internal citations omitted); *see also Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493-94 (D.C. Cir. 2008). Thereafter, "to survive summary judgment the plaintiff must show that a reasonable jury could conclude from all of the evidence that the adverse employment decision was made for a discriminatory [or retaliatory] reason." *Lathram*, 336 F.3d at 1088; *see Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007).

In the following paragraphs, we consider whether a reasonable jury could so conclude with respect to each of Montgomery's three claims.

1. Montgomery's first claim is that the PBGC denied his request for an accretion-of-duties promotion to grade level GS-13, based on his new COTR duties, for discriminatory and/or retaliatory reasons. In response, the PBGC states that it had a nondiscriminatory (and nonretaliatory) reason for the denial: the desk audit indicated the job was in fact a GS-11 position, and for the COTR duties to affect Montgomery's grade, "he would have to possess the qualifications to 'oversee' the work from a completely 'technical' aspect or be an Accountant," qualifications that he did not have. J.A. 379.

As we have previously noted, "one way for a plaintiff to show that an adverse employment decision was made for a discriminatory reason is to 'show[ ] that the nondiscriminatory explanation the defendant proffered for its decision was false.'" *Czekalski*, 475 F.3d at 366 (quoting *Lathram*, 336 F.3d at 1089); *see Reeves*, 530 U.S. at 146-47. Montgomery attempts to demonstrate the falsity of the PBGC's explanation by showing that the agency, based on accretion of duties, had previously promoted five other employees who were outside his protected class. But Montgomery's evidence did not establish that any of those employees were similarly situated to him. None of them had the same position he had, and none worked in the same branch of the agency. J.A. 48-53 (Montgomery Dep.). Nor was there evidence that any of those employees received accretion-of-duties promotions due to COTR duties. Indeed, Montgomery conceded at his deposition that three of the five employees did not receive their promotions on the basis of COTR duties, J.A. 50-53, and that he had "no idea" whether the other two did or did not. J.A. 48-49. "In the absence of evidence that the comparators were actually similarly situated" to him, an

inference of falsity or discrimination is not reasonable. *Waterhouse*, 298 F.3d at 995-96; *see, e.g.*, *McGill v. Munoz*, 203 F.3d 843, 848 (D.C. Cir. 2000) (holding that the plaintiff provided no evidence of pretext where she "offered no evidence that employees with similarly suspicious patterns of absenteeism were treated any differently than she was").

Montgomery also contends that a jury could infer discriminatory animus from the fact that his supervisor, Cynthia Adams, lied to the desk auditor about his job duties (and hence his experience). It is true that "a plaintiff can attempt to show that the employer's explanation misstates the candidates' qualifications," and that "[a]dequate evidence of this type may suffice to permit a jury to infer that the employer's explanation is incorrect or fabricated, and thus to infer discrimination." *Aka*, 156 F.3d at 1295. But the evidence does not show that Adams lied about Montgomery's duties. To the contrary, the record reveals the parties' agreement that, although Montgomery performed basic accounting work, he did not perform more complex accounting duties, such as trust or investment accounting. *See* J.A. 82-83 (Montgomery Dep.); J.A. 132-34 (Adams Dep.); J.A. 138-39 (Adams Dep.); *cf. Holcomb v. Powell*, 433 F.3d 889, 899 (D.C. Cir. 2006) (suggesting that only "a rather explicit misstatement" regarding an employee's experience "might permit an inference of discrimination" (citing *Aka*, 156 F.3d at 1295)). Under these circumstances, an inference of discriminatory animus is not reasonable.

2. Turning next to Montgomery's claim that he was unlawfully denied the GS-12/13 Accountant position, the PBGC again offers a nondiscriminatory reason for failing to select Montgomery: it simply chose a more qualified applicant. Even "[i]n a close case, a reasonable juror would usually assume that the employer is more capable of assessing the significance of small differences in the qualifications of the candidates, or that

the employer simply made a judgment call." *Aka*, 156 F.3d at 1294. But this case is not even close. By his own admission, Montgomery had only an associate's degree in marketing, 24 credit hours of college-level accounting courses, and experience limited to accounting for cash assets. J.A. 80-82 (Montgomery Dep.); J.A. 100 (Montgomery Aff.). By contrast, the person whom the PBGC hired -- Lafaye Graham -- had an undergraduate degree in finance, a master's degree in accounting, and fifteen years of accounting experience, including investment accounting. J.A. 140 (Adams Dep.). Under these circumstances, a reasonable jury could not have inferred discrimination. *See Holcomb*, 433 F.3d at 897-98.

Montgomery attempts to rebut the PBGC's nondiscriminatory explanation by insisting that the agency refused to give him appropriate credit for his 24 hours of accounting courses. Although he acknowledges that he failed to submit a transcript showing that he had completed the courses, as required by the vacancy announcement, he insists that the agency had made allowances for other applicants in similar circumstances. This argument, however, is simply irrelevant. With or without the 24 hours, Montgomery's qualifications do not approach those of the applicant the agency hired.

Of course, demonstrating that the employer's proffered explanation for its actions is untrue is not the only way to show that it made an adverse employment decision for a discriminatory reason. *See, e.g.*, *Morgan v. Fed. Home Loan Mortgage Corp.*, 328 F.3d 647, 654 (D.C. Cir. 2003). "[E]vidence of discriminatory statements or attitudes on the part of the employer" is another way. *Czekalski*, 475 F.3d at 363 (quoting *Aka*, 156 F.3d at 1289). Although Montgomery offers no evidence of *discriminatory* statements or attitudes on the part of PBGC employees, he does contend that he has evidence of *retaliatory* animus.

The strongest evidence that Montgomery proffers -- on this or any of his other claims -- is an ambiguous statement that Adams made at her deposition. In response to counsel's question as to why a Human Resources (H.R.) Specialist had asked her about Montgomery's qualifications, Adams answered that it may have been "because of Mr. Montgomery's past history." J.A. 145. Montgomery speculates that this must have been a reference to his 1998 EEO settlement, and that it shows agency animus against such activity. Immediately before answering that question, however, Adams had answered "no" to the direct question of whether she and the H.R. Specialist had discussed Montgomery's "prior EEO activity." J.A. 145. And the H.R. Specialist himself testified that what he had discussed with Adams was Montgomery's accounting experience at the agency. J.A. 180 (Lattimer Aff.). Against this, Montgomery has only a form of compound speculation: *his* speculation about the meaning of *Adams'* speculation about why the H.R. Specialist had contacted her. The possibility that a jury might speculate in the plaintiff's favor under such circumstances is simply insufficient to defeat summary judgment. *See Haynes v. Williams*, 392 F.3d 478, 485 (D.C. Cir. 2004); *Rogers Corp. v. EPA*, 275 F.3d 1096, 1103 (D.C. Cir. 2002).

3. Finally, we turn to Montgomery's challenge to the PBGC's failure to select him for the GS-13 Collections Analyst position, a position that was advertised under both a status and a non-status vacancy announcement. Regarding his failure to win appointment under the former, Montgomery offered no evidence to rebut the PBGC's nondiscriminatory reason for non-selection: that the agency's decisionmakers had never received a status application from him. Although there may have been a genuine dispute (based on his own testimony) as to whether Montgomery actually submitted such an application, there was no genuine dispute that the decisionmakers never received it. There was no computer (or other) record that the PBGC had

received a status application from Montgomery, and no evidence (or allegation) that the employee who logged in and disseminated such applications (the receptionist) had any animus toward him. *See* Def. Mot. Ex. 2 at 156-57 (Montgomery Dep.). Regarding his non-status application, Montgomery likewise failed to rebut the PBGC's nondiscriminatory explanation for not choosing him: that it filled the position with a candidate from the status list and therefore, consistent with its selection procedures, did not consider anyone on the non-status list. Nor did Montgomery offer any other evidence that supported a claim of discrimination or retaliation with respect to his failure to win the Collections Analyst position under either announcement.

## III

Because no reasonable jury could conclude from all of the evidence that the PBGC discriminated or retaliated against Montgomery, the district court's grant of summary judgment in favor of the PBGC is

*Affirmed.*