# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 16, 2009         Decided May 14, 2010

No. 08-7145

THOMAS P. ATHRIDGE, SR. AND THOMAS P. ATHRIDGE, JR.,
APPELLANTS

v.

AETNA CASUALTY AND SURETY CO.,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:96-cv-02708)

———

*Erik S. Jaffe* argued the cause and filed the briefs for appellants.

*Steven M. Klepper* argued the cause for appellee. With him on the brief was *Geoffrey H. Genth*.

Before: ROGERS, GARLAND and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: Tommy Athridge and his father have spent more than a decade trying to collect the judgment entered against the driver responsible for an accident that severely injured Athridge. In this diversity action, the Athridges seek to recover from the driver's insurer, Aetna Casualty and Surety Company. The Athridges appeal a jury verdict that absolved Aetna of liability under its policy as well as a grant of summary judgment in favor of Aetna on the Athridges' alternative theories of liability. We affirm.

**I.**

On July 29, 1987, Jorge Iglesias, then 16, went to the house of his cousins, Francisco and Hilda Rivas, who were out of town. Entering their house through an open window, Iglesias found the keys to the Rivases' car and took it for a drive. What began as a joyride ended in tragedy when Iglesias struck and seriously injured his friend Tommy Athridge, who was on foot and became the victim in a game of "chicken" gone awry. We have described the details of the accident elsewhere. *See Athridge v. Rivas*, 141 F.3d 357, 359 (D.C. Cir. 1998).

This lawsuit is one thread in the web of litigation spun from that unfortunate event. Its premise is simple enough. The Athridges won a $5.5 million judgment against Iglesias in a previous lawsuit. He never paid. In an attempt to collect the judgment, the Athridges brought this suit against Aetna, Iglesias's insurer. This is the second time some part of this suit has come before us. In the previous appeal, we partially reversed a grant of summary judgment in favor of Aetna and explained that Aetna's liability turned on the applicability of a policy exclusion that barred coverage for any person using a vehicle without a reasonable belief that he is entitled to do so.

*See Athridge v. Aetna Cas. & Sur. Co. (Aetna I)*, 351 F.3d 1166, 1172 (D.C. Cir. 2003). Because Iglesias's state of mind at the time of the accident presented a disputed question of material fact, we remanded the case for further proceedings. *Id.* at 1172, 1177. On remand, Aetna prevailed when a jury concluded that Iglesias lacked a reasonable belief that he was entitled to drive the Rivases' car. The Athridges appeal the jury verdict, asserting that various procedural and evidentiary errors at trial require reversal.

This appeal encompasses more than that verdict, however. On remand, the Athridges renewed two alternative theories of liability they had raised, but the district court declined to address, prior to *Aetna I*. These theories spring from Aetna's participation in the Athridges' original lawsuit against Iglesias—the case in which the Athridges won the $5.5 million judgment. *See Athridge v. Iglesias*, 950 F. Supp. 1187, 1194 (D.D.C. 1996).

For that trial, Iglesias retained his own lawyer, Irving Starr, to defend him. A few days before the start of trial, Starr ran into Paul Pearson, a lawyer Aetna had retained in a previous matter related to the accident. Starr asked for Pearson's help in the impending trial, and Pearson agreed. Starr made no offer to pay Pearson, knowing Iglesias could not afford another lawyer, and when Pearson agreed to help, Starr assumed he would do so for free. Unbeknownst to Starr, Pearson then went to Aetna and persuaded it to pay him to help Starr on the strength of his argument that securing a verdict for Iglesias in this matter would be in the insurer's interest. Pearson entered an appearance for Iglesias on the second day of trial, but only after Iglesias and Starr had signed a handwritten document acknowledging that Pearson's assistance in no way indicated that Aetna was forfeiting its right to disclaim coverage for the accident. Pearson

participated actively in Iglesias's defense and withdrew only after Aetna told him, while the appeal was pending, that it would no longer pay him to help Iglesias.

On remand from *Aetna I*, the Athridges maintained that Pearson's involvement at Iglesias's trial created liability for Aetna apart from whether the policy covered the accident. First, they argued that Aetna was estopped from denying coverage because it had participated in Iglesias's legal defense. Second, they claimed that, under its policy, Aetna's participation triggered an obligation to pay postjudgment interest on the award against Iglesias, even in the absence of any duty to pay on the underlying judgment.

The magistrate judge turned to these alternative theories of liability after conducting the jury trial on Iglesias's state of mind and entered summary judgment for Aetna on both. He rejected the estoppel claim because the Athridges presented no evidence that Aetna controlled or prejudiced Iglesias's defense in any way. *Athridge v. Aetna Cas. & Sur. Co.*, 510 F. Supp. 2d 1, 7–8 (D.D.C. 2007). He was also unpersuaded by the argument that Aetna was required to pay postjudgment interest, finding no such duty when the insurer had no liability for the underlying judgment. *Id.* at 3–5. The Athridges appeal both decisions.

This court has jurisdiction to hear the Athridges' appeal pursuant to 28 U.S.C. §§ 636(c)(3) and 1291 (2006). In Part II, we review the entry of summary judgment in Aetna's favor. In Part III we address the challenges to the jury verdict. Because this is a diversity action, we apply the substantive law of the District of Columbia. *See Messina v. Nationwide Mut. Ins. Co.*, 998 F.2d 2, 4 (D.C. Cir. 1993).

**II.**

At the outset, Aetna maintains that the Athridges forfeited their theories of liability arising from Aetna's participation in Iglesias's defense by failing to raise them in *Aetna I*. The Athridges counter that they were not obliged to make arguments the district court had failed to address. Not to be outdone, the Athridges also reply that Aetna forfeited its forfeiture argument by failing to raise it in a timely fashion in the district court on remand following *Aetna I*. We need not resolve these dueling claims of forfeiture. We assume for the purposes of our analysis that the Athridges have preserved these issues and nevertheless affirm the grant of summary judgment in Aetna's favor. *See, e.g.*, *Tax Analysts v. I.R.S.*, 495 F.3d 676, 680 (D.C. Cir. 2007).

We review a grant of summary judgment de novo. *See, e.g.*, *Woodruff v. Peters*, 482 F.3d 521, 526 (D.C. Cir. 2007). Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). "In reviewing a grant of summary judgment, we must 'view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor.'" *Woodruff*, 482 F.3d at 526 (quoting *Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 850 (D.C. Cir. 2006)).

**A.**

The Athridges maintain that Aetna is estopped from disclaiming coverage for the accident because it paid Pearson to assist in Iglesias's defense without a suitable reservation of its right to disclaim coverage. *See* Appellants' Br. at 15. But under District of Columbia law, an insurer may be estopped from denying coverage only if its participation somehow

prejudiced the insured by undermining his ability to defend himself. *See Diamond Serv. Co. v. Utica Mut. Ins. Co.*, 476 A.2d 648, 658 (1984). *See generally In re Himmelfarb's Estate*, 345 A.2d 477, 483 (D.C. 1975) ("An essential element of estoppel is prejudice caused by detrimental reliance.").

The Athridges contend that prejudice is not an element of estoppel, and point to *Continental Casualty Co. v. Hartford Fire Insurance Co.*, 116 F.3d 932 (D.C. Cir. 1997), in support. *Continental* involved an insurer that "waived the right" to raise the breach of a policy provision as a defense to coverage. *Id.* at 939 n.8. The *Continental* court made no mention of prejudice, but that is of no help to the Athridges' argument because waiver of a policy breach is distinct from estoppel by defense:

> Waiver is an act or course of conduct by the insurer which reasonably leads the insured to believe that [a] breach will not be enforced. Estoppel, on the other hand, generally results when an insurance company assumes the defense of an action [and] to prevail on this basis, the insured is required, in some jurisdictions, to show prejudice while in other jurisdictions prejudice will be presumed.

*Diamond*, 476 A.2d at 654 (citation omitted). Thus for the Athridges' estoppel claim to succeed, Pearson's participation must have somehow harmed Iglesias's defense.

Anticipating our conclusion that estoppel requires a showing of prejudice, the Athridges maintain that prejudice should be presumed in this case. This argument stands on firmer ground: An insured may be entitled to a rebuttable presumption of prejudice, depending on the amount of control the insurer exercised over the defense. *See Nat'l Union Fire*

*Ins. Co. of Pittsburgh v. Aetna Cas. & Sur. Co.*, 384 F.2d 316, 318 (D.C. Cir. 1967); *Diamond*, 476 A.2d at 657–58. Assuming the Athridges were entitled to this presumption, summary judgment was still proper because Aetna rebutted the presumption with uncontroverted evidence that its participation did not harm Iglesias. *Cf. Curtis v. Cuff*, 537 A.2d 1072, 1075 (D.C. 1987) (holding that where "uncontroverted" evidence rebuts a presumption that a defendant consented to the driver's use of his vehicle, the defendant is "entitled to judgment as a matter of law"). To begin with, Iglesias knew that Aetna would not indemnify him if he lost—the insurer had already won a declaratory judgment absolving it of liability for the accident years before. *See Aetna Cas. & Sur. Co. v. Iglesias*, C.A. No. 90-11645 (D.C. Super. Ct. Feb. 22, 1991). Iglesias had every incentive to muster his best defense. This is one reason why he had his own "counsel readily available to [him] at all relevant times," a fact that tends to undermine any claim of prejudice. *Diamond*, 476 A.2d at 658. It was Iglesias's own counsel, Starr, who invited Pearson to participate, and who concluded that Pearson "did a magnificent job" at trial. Starr Dep. at 121.

The only purported evidence of prejudice the Athridges offered is a single ambiguous sentence in a letter from Pearson to Aetna explaining that he and Starr tried the case "primarily on the issue of liability, not damages." Letter from Pearson to Aetna (Apr. 2, 1996). The Athridges highlight this statement to argue that Aetna, through Pearson, prejudiced Iglesias's defense by neglecting the issue of damages. The Athridges ask this court to infer from this single statement three conclusions: (1) Iglesias's lawyers failed to adequately contest damages at trial, (2) this failure was the doing of Pearson or Aetna, and (3) this failure resulted in an inflated damage award. There is simply no evidence to support any of

these. There is no indication that Pearson impeded Starr from putting on the best defense possible under the circumstances. *See Aetna I*, 351 F.3d at 1174–75 (noting that Pearson's participation in Iglesias's defense was "a windfall benefit for [Iglesias]," especially in the absence of any indication that "Aetna, Svengali-like, talked [Iglesias's] lawyers out of a better defense"). The Athridges likewise failed to show what arguments could have been made that might have resulted in a lower award of damages.

In short, the Athridges ask this court to assume too much. At oral argument, their counsel conceded their claim of prejudice was largely "speculative." Tr. of Oral Argument at 11. "The possibility that a jury might speculate in the plaintiff's favor . . . is simply insufficient to defeat summary judgment." *Montgomery v. Chao*, 546 F.3d 703, 708 (D.C. Cir. 2008). The magistrate judge was correct to enter summary judgment in favor of Aetna on the estoppel issue.

**B.**

The Athridges also argue that Aetna's participation in Iglesias's defense triggered an obligation to pay interest on the unpaid judgment against him, even if Aetna had no obligation to pay the underlying judgment. Thirteen years of interest on $5.5 million is no small sum—according to the Athridges, it is more than $3 million. They locate this duty in the "Supplementary Payments" section of the Aetna policy, which provides:

> In addition to our limit of liability, we will pay on behalf of a covered person:
> > . . . .
> > Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we

offer to pay that part of the judgment which does not exceed our limit of liability for this coverage.

Aetna Personal Auto Policy (Aetna Policy) at 1–2. The Athridges read this to require Aetna to pay postjudgment interest whenever it defends any suit against a covered person, regardless of whether it is liable for the judgment itself. Iglesias was a covered person at the time of the accident, and Pearson's participation in his defense made that case a "suit [Aetna] defend[s]," therefore Aetna must pay interest on the award against him. Under this reading, even when a policy exclusion denies the insured coverage, the insurer is liable for postjudgment interest if the insured fails to pay. Aetna could terminate that obligation only by paying the judgment it did not owe. The magistrate judge rejected this argument, concluding that if the insurer is not liable on the judgment, it cannot be liable for postjudgment interest. We review this issue de novo. *Segar v. Mukasey*, 508 F.3d 16, 22 (D.C. Cir. 2007).

We agree with the magistrate judge that any obligation to pay postjudgment interest under the policy is contingent upon an obligation to indemnify the insured for its liability on the underlying claim. An insurer will often defend a lawsuit against the insured even when an exclusion absolves the insurer of any duty to indemnify. *See Stevens v. United Gen. Title Ins. Co.*, 801 A.2d 61, 67 (D.C. 2002) ("[T]he duty to defend is broader and more extensive than the duty to indemnify."). Under the Athridges' view, defending an insured would require Aetna to assume liability on a judgment in order to avoid a bill for postjudgment interest that could exceed the policy's limits. *See* Aetna Policy at 1–2 ("*In addition to our limit of liability*, we will pay . . . [i]nterest accruing after a judgment is entered . . . ." (emphasis added)). This reading effectively renders the policy exclusions that

follow the supplementary payment provisions a dead letter in any suit Aetna defends. To adopt it would contravene our obligation to "construe the contract as a whole, giving effect to each of its provisions, where possible." *Akassy v. William Penn Apartments Ltd. P'ship*, 891 A.2d 291, 303 (D.C. 2006); *see Stevens*, 801 A.2d at 66 ("Because an insurance policy constitutes a contract, we construe it according to contract principles."). Accordingly, we hold that the Aetna policy does not require the payment of interest on a judgment for which Aetna has been adjudged to have no liability and affirm the magistrate judge's entry of summary judgment in favor of Aetna on this issue.

The Athridges direct our attention to no case that convinces us to do otherwise. The cases they cite hold only that an insurer's duty to pay *costs* in a suit it defends does not depend on the insurer's liability for the judgment. *See Knippen v. Glens Falls Ins. Co.*, 564 F.2d 525, 530 (D.C. Cir. 1977); *Pac. Employers Ins. Co. v. Alex Hofrichter, P.A.*, 670 So. 2d 1023, 1025 (Fla. Dist. Ct. App. 1996). These cases provide no support for allowing the defense of a suit to create de facto indemnification liability.

The Athridges concede that ours is a plausible reading of the policy, Tr. of Oral Argument at 19, but insist theirs is as well. Relying on the principle of *contra proferentum*, which holds that "any reasonable doubt which may arise as to the meaning or intent of" an insurance policy provision "will be resolved against the insurer," *Cameron v. USAA Prop. & Cas. Ins. Co.*, 733 A.2d 965, 968 (D.C. 1999), they maintain that we must construe the policy as they do. But *contra proferentum* "does not require courts to indulge in 'forced constructions to create an obligation against the insurer.'" *Id.* (quoting *Boggs v. Motors Ins. Corp.*, 139 A.2d 733, 735 (D.C. 1958)). The Athridges' interpretation of the policy, which

permits a *supplementary* payment provision to manufacture *primary* liability where none otherwise exists, is the epitome of such a forced construction. We will not indulge it.

### III.

We turn now to the Athridges' challenges to the jury verdict that absolved Aetna of liability under the policy. In *Aetna I*, we held that the policy covered the accident only if Iglesias had a reasonable belief that he was entitled to use the Rivases' car and remanded the case for a determination of whether that was in fact the case. A jury found in Aetna's favor. The Athridges, presenting a variety of issues, ask us to set aside the verdict. We find no reason to do so.

### A.

The Aetna policy purchased by Iglesias's parents for their family excluded from coverage accidents involving "*any person* using a vehicle without a reasonable belief that the person is entitled to do so." Aetna Policy at 2 (emphasis added). The Athridges argue that this provision did not exclude coverage for family members like Iglesias. We already rejected that interpretation in *Aetna I*, explaining that the phrase "any person" unambiguously encompasses family members. 351 F.3d at 1172. The Athridges ask us to reverse that decision.

Under the law-of-the-case doctrine, we reconsider our previous holding in a case with multiple appeals only in "extraordinary circumstance[s]," such as an "intervening change in controlling legal authority" or if our prior decision is "clearly erroneous and would work a manifest injustice." *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (en banc). Neither condition obtains here. For an intervening

change in controlling law, the Athridges indentify a District of Columbia Court of Appeals decision that took an expansive, contextual approach to the interpretation of an insurance policy. *See Richardson v. Nationwide Mut. Ins. Co.*, 826 A.2d 310, *reh'g en banc granted*, 832 A.2d 752 (D.C. 2003), *vacated as moot*, 844 A.2d 344 (D.C. 2004). The Athridges contend that *Richardson* casts doubt on the plain meaning approach we employed in *Aetna I*. But *Richardson* is not a controlling authority. Not only does it not address the issue presented in *Aetna I*, but the Court of Appeals granted rehearing *en banc* and then vacated the opinion after the parties settled. Nor can the Athridges show clear error by the *Aetna I* court, whose holding is in accord with the conclusions reached by a number of other courts. *See, e.g.*, *Gen. Accident Fire & Life Assurance Corp. v. Perry*, 541 A.2d 1340, 1349 (Md. Ct. Spec. App. 1988); *St. Paul Ins. Co. v. Rutgers Cas. Ins. Co.*, 557 A.2d 1052, 1054 (N.J. Super. Ct. App. Div. 1989); *Hartford Ins. Co. of Midwest v. Halt*, 646 N.Y.S.2d 589, 594 (App. Div. 1996); *Newell v. Nationwide Mut. Ins. Co.*, 432 S.E.2d 284, 290 (N.C. 1993).

In an attempted end run around the law-of-the-case doctrine, the Athridges ask us to certify the issue decided in *Aetna I* to the District of Columbia Court of Appeals. But in the absence of any reason for us to reconsider our prior decision, we see no reason to ask another court to do so. We deny this belated request for certification.

**B.**

The Athridges also challenge the magistrate judge's exclusion of certain evidence under Federal Rule of Evidence 403. Rule 403 permits the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the

jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403. We review the magistrate judge's decision for abuse of discretion, mindful that "[t]he trial court has broad discretion to weigh the extent of potential prejudice against the probative force of relevant evidence." *Fredrick v. District of Columbia*, 254 F.3d 156, 159 (D.C. Cir. 2001).

We first affirm the magistrate judge's exclusion of a jury verdict rendered in the Athridges' separate lawsuit against the Rivases. The Athridges sued on the theory that, as owners of the car, the Rivases were vicariously liable for the accident because they consented to Iglesias's use of the car. Under District of Columbia law, which we discuss in the next section, *see infra* Part III.C, the Rivases could avoid liability by showing they gave no such consent, *see Athridge v. Rivas*, 312 F.3d 474, 475 (D.C. Cir. 2002). The jury found that the Rivases failed to prove that they did not consent to Iglesias's use of the car, and the case eventually settled on appeal for $2.8 million. Although there is no absolute bar to the use of prior verdicts, courts are wary that their admission into evidence "creates the possibility that the jury will defer to the earlier result and thus will, effectively, decide a case on evidence not before it." *Coleman Motor Co. v. Chrysler Corp.*, 525 F.2d 1338, 1351 (3d Cir. 1975). This possibility was especially problematic here. The magistrate judge noted that the jury found only a double negative—that the Rivases had *not* shown by a preponderance of evidence that they did *not* consent to Iglesias's use of the car. To permit that verdict to be used to prove an affirmative—that the Rivases had consented—would imply a conclusion that the jury did not necessarily reach. Keeping the verdict out of evidence was not an abuse of discretion.

The magistrate judge also blocked the Athridges' attempt to introduce the judge's opinion from Iglesias's trial, which included a description of Iglesias's driving on the day of the accident. They hoped the judge's description would support their claim that Iglesias reasonably believed he could use the Rivases' car. According to the Athridges, that description suggests Iglesias was familiar with the car's manual transmission, which might suggest that the Rivases had let him drive the car before, which in turn could suggest that Iglesias thought he could take the car on that day. This attenuated reasoning, relying upon suggestion upon suggestion upon suggestion, is offered in support of a conclusion that was expressly rejected by the judge's finding that Iglesias "t[ook] the car without the permission of the owner." *Iglesias*, 950 F. Supp. at 1189. As the magistrate judge appropriately noted, if the Athridges wanted to demonstrate Iglesias's facility with the Rivases' car, there was better evidence at hand: the testimony of witnesses who saw him driving it on the day of the accident. *See Henderson v. George Washington Univ.*, 449 F.3d 127, 137 (D.C. Cir. 2006) ("It is well established that under Rule 403, a court should weigh the probative value of evidence in light of appropriate evidentiary alternatives."). The magistrate judge did not abuse his discretion in excluding the opinion.

The Athridges finally argue that the magistrate judge should not have applied Rule 403 at all because Aetna was "bound" by the previous judge's opinion and could not contest its version of the facts. Appellants' Br. at 46. Though the Athridges do not use the phrase, this is an argument of issue preclusion, which bars relitigation of matters previously adjudicated. Under District of Columbia law, issue preclusion does not apply where issues are only similar, but not identical, or where the determination of an issue was "dictum" and not "essential to the judgment." *Hogue v. Hopper*, 728 A.2d 611,

614 (D.C. 1999). The issues essential to the judgment in Iglesias's trial were his negligence, Tommy Athridges's contributory negligence, the last clear chance doctrine, and damages. *See Iglesias*, 950 F. Supp. at 1190–94. Iglesias's belief about whether he had permission to use the Rivases' car or even whether he had used it before had no bearing on any of these. Statements in the judge's opinion addressing these concerns could have no preclusive effect in this matter, and the magistrate judge was free to apply the Rule 403 balancing test.

## C.

The Athridges also argue that the magistrate judge erred by failing to include in the jury instruction a reference to the D.C. Motor Vehicle Safety Responsibility Act (MVSRA), D.C. CODE § 50-1301.08, which creates a presumption that any person driving a car does so with the consent of the registered owner, making the owner vicariously liable for the driver's conduct. This presumption "places the burden of proof as to the question of consent upon the defendant-owner." *Curtis*, 537 A.2d at 1074. The Athridges wanted the magistrate judge to explain to the jury that "[t]here is a powerful presumption under the MVSRA that a driver operated the car with the owner's consent." *Athridge v. Aetna Cas. & Sur. Co.*, 585 F. Supp. 2d 20, 29 (D.D.C. 2008).

The magistrate declined to invoke the MVSRA, correctly noting that it would have been redundant. The jury instructions already explained that Aetna, because its defense rested on a policy exclusion, bore the burden of proving that Iglesias lacked a reasonable belief that he was entitled to use the Rivases' car. *See Cameron*, 733 A.2d at 969 (explaining that an insurer bears the burden of proving the applicability of a policy exclusion). The burden-shifting mechanism of the

MVSRA thus had no work to do. Assuming without deciding that the MVSRA applies when the liability of a vehicle's owner is not at issue, we review the magistrate judge's "choice of the language to be used in a particlar instruction . . . for abuse of discretion," *Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549, 556 (D.C. Cir. 1993), and affirm.

## D.

The magistrate judge separated the case into two parts, conducting the jury trial on whether Iglesias believed he was permitted to use the car before resolving the issues arising from Aetna's role in Iglesias's defense. The Athridges appeal this bifurcation, arguing that all the theories of liability should have been tried together. We review for abuse of discretion the decision to separate issues for trial, which may be done in the interest of "convenience, to avoid prejudice, or to expedite and economize." FED. R. CIV. P. 42(b); *see, e.g.*, *Angelo v. Armstrong World Indus., Inc.*, 11 F.3d 957, 964 (10th Cir. 1993).

Bifurcation may be appropriate "where the evidence offered on two different issues will be wholly distinct, or where litigation of one issue may obviate the need to try another issue." *Vichare v. AMBAC Inc.*, 106 F.3d 457, 466 (2d Cir. 1996) (citation omitted). Both conditions were present here. Evidence of Aetna's involvement in Iglesias's trial in 1996 had no relation to what Iglesias believed when he took the wheel of the Rivases' car in 1987. And had the jury found in favor of the Athridges on the latter issue, there would have been no need to consider the former.

Even so, bifurcation would have been improper if it was "unfair or prejudicial" to the Athridges. *Angelo*, 11 F.3d at 964. Their claims of prejudice, however, fall flat. They first

contend that bifurcation unfairly kept them from using the judge's opinion with its supposedly preclusive findings to show that Iglesias had permission to use the car. But we have just held that the Athridges could not use the judge's opinion in this way. The next alleged harm from bifurcation came from the magistrate judge granting Aetna's motion to open and close the case. He did so because Aetna bore the burden of proof on the sole issue to be argued at the first stage: whether Iglesias lacked permission to drive the Rivases' car. *See Silver v. New York Life Ins. Co.*, 116 F.2d 59, 61–62 (7th Cir. 1940) (upholding the district court's decision to permit an insurer to open and close the case where the only contested issue was the insurer's affirmative defense). The Athridges, however, completely fail to explain how the order of presentation hindered their case. *Cf. Lillycrop v. Kinsky*, 300 F.2d 736, 737 (D.C. Cir. 1962) ("[T]he ruling of a trial court on the question as to who should open and close is usually not reversible on appeal."). Finally, the Athridges assert that bifurcation prevented them "from presenting their case to a jury in a way that made sense and told the full story." Appellants' Br. at 45. The insinuation that the jury could not determine what Iglesias reasonably believed on the day of the accident without considering the other possible bases of Aetna's liability is not only logically deficient, but is belied by how the Athridges litigated this case. They did not see fit to mention their alternative theories of liability in *Aetna I* even though a major question in that appeal was whether Iglesias's state of mind was subject to a genuine factual dispute. We thus see no prejudice in omitting the alternative theories of liability from the jury's consideration, and the Athridges identify no other parts of their "story" that went untold. Finding no prejudice, we conclude there was no abuse of discretion in the magistrate judge's bifurcation of the case.

Having dispatched the challenges to the magistrate judge's conduct of the trial, we uphold the jury verdict.

## IV.

For the foregoing reasons, the judgment is

*Affirmed.*