DIPPIN' DOTS, LLC, Plaintiff

v.

TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, Defendant

CASE NO. 5:17–CV–00061–GNS–LLK

United States District Court,
W.D. Kentucky,
Paducah Division.

Signed 08/23/2017

Michael K. Avery, Michael D. McClintock, McAfee & Taft, Oklahoma City, OK, Stephen E. Smith, Jr., McMurry & Livingston, PLLC, Paducah, KY, for Plaintiff.

Michael S. Maloney, Stephen Keller, Schiller Barnes Maloney PLLC, Louisville, KY, Van T. Willis, Kightlinger & Gray LLP–New Albany, New Albany, IN, for Defendant.

## ORDER

Lanny King, Magistrate Judge

Judge Greg N. Stivers referred this matter to Magistrate Judge Lanny King for resolution of all litigation planning issues, entry of scheduling orders, consideration of amendments thereto, and resolution of all non-dispositive matters, including discovery issues. (Docket # 8).

Defendant was granted leave to file a Motion to Bifurcate on the issue of Plaintiff's bad faith claims. (Docket # 12). On July 1, 2017, Defendant filed the instant Motion to Bifurcate Contract and Bad Faith Claims and to Stay Bad Faith Discovery (the "Motion to Bifurcate"). (Docket # 13). On July 26, 2017, Plaintiff filed its response to the Motion to Bifurcate. (Docket # 16). On August 8, 2017, Defendant filed its Reply. (Docket # 17). The Motion to Bifurcate having been fully briefed, it is ripe for determination.

Having carefully considered the record before it, the Court finds bifurcation, along with a stay of discovery, to be appropriate. Accordingly, Defendant's Motion to Bifurcate (Docket # 13) is GRANTED.

## Background

Plaintiff Dippin Dots ("Plaintiff") makes and sells ice cream in the form of small beads that must be stored at low temperatures. (Docket # 1). It has a production facility in Paducah, Kentucky where such beads are made and then stored in a refrigeration system before they are delivered to retailers and online customers. (Id.). On November 5, 2016, a power interruption tripped a circuit breaker supplying electricity to the refrigeration system at the Paducah facility. (Docket # 1, at ¶ 8). Consequently, the power supply for that system was interrupted and the temperature in the storage room began to rise, resulting in spoiled product. (Id. at ¶ 9).

When this incident occurred, Defendant Travelers Property Casualty Company of America ("Defendant") insured Plaintiff under two different policies: a property and casualty policy ("Property Policy") and an equipment breakdown policy ("Equipment Breakdown Policy"). (Id. at ¶ 14). Following the loss, Plaintiff's representatives made claims for coverage under both policies. (Docket # 13–1 at 3). Defendant assigned a Property Claim Representative to investigate and evaluate the claim under the Property Policy and a Boiler and Machinery Claim Representative to investigate and evaluate the claim under the Equipment Breakdown Policy. (Id.).

It was determined that it was likely a squirrel had caused a fault on power lines operated by the Paducah Power System at an intersection outside of Plaintiff's premises which, in turn, caused a momentary power "blink" for Plaintiff's facility and that the power interruption tripped a circuit breaker within Plaintiff's factory, which would not allow the refrigeration compressor to activate (the "Paducah Power System Incident"). (Docket # 13–1 at 3); (Docket # 16 at 8). At some point during the weekend that the Paducah Power System Incident occurred, a second incident occurred. (Id.). The power system that feeds power to one of the compressors in Plaintiff's refrigeration system somehow "tripped," causing the temperature in the freezer system to rise. (Docket # 16 at 9). Although Plaintiff has a computerized "call out system" which alerts Plaintiff's technicians if the temperature in the freezers is improper, no call was made to Plaintiff's technicians, and Plaintiff was unaware of the problem until the morning of Monday, November 7, 2016, when it was determined roughly $750,000 of product was lost due to spoliation. (Id.).

Following the investigation, Defendant concluded that "the facts surrounding the loss did not trigger coverage under the Equipment Breakdown Policy" resulting in Defendant notifying Plaintiff in writing that the claim for coverage under the Equipment Breakdown Policy was being denied. (Id. at 1, 3). In a separate letter conveying a partial denial of coverage under the Property Policy due to "various coverage exclusions, including those for loss of damage relating to power failures or fluctuations originating away from the insured premises," Defendant wrote that Plaintiff was entitled to $100,000 under a Spoilage Coverage Extension Endorsement of the Property Policy and issued a check for

$100,000 on February 9, 2017 to Plaintiff. (*Id.* at 4). At or about the same time the Equipment Breakdown Policy coverage was tendered, Defendant formally notified Plaintiff that its Boiler Policy would be terminated effective later that spring. (*Id.* at 3).

Plaintiff claims that Defendant initially represented the full amount of Plaintiff's approximately $750,000 product loss would be covered under either the Boiler or Property Policy, only later changing course. (Docket # 16, at 3). Plaintiff alleges that the parties will offer experts who will testify to conflicting factual accounts and opinions concerning what happened during the electrical incident associated with Plaintiff's loss and, in light of those opinions, what caused the loss. (*Id.* at 4). Plaintiff argues that Defendant "conducted the investigation in bad faith" leading to incorrect conclusions regarding the loss and "construed policy provisions in an unreasonable and pre-textual manner designed to minimize any coverage that might be available." (*Id.* at 4–6).

## Legal Standard

Kentucky state courts bifurcate bad faith claims from the underlying contract claims as a matter of course. *Graves v. Standard Ins. Co.*, No. 3:14–CV–558–DJH, 2015 WL 2453156, at *3 (W.D. Ky. May 22, 2015). While federal procedural law controls that decision in federal courts, "the overwhelming case law ... routinely grants motions to bifurcate and stay discovery of first-party claims of bad faith in insurance litigation until such time as the underlying breach of contracts claim is resolved." *Id.* Litigation over insurance coverage "lends itself to bifurcation under Rule 42(b) because if a bad faith claimant cannot prevail on the coverage issue, her claim of bad-faith necessarily fails." *Nationwide Mut. Fire Ins. Co. v. Jahic*, No. 3:11–CV–00155, 2013 WL 98059, at *2 (W.D. Ky. Jan. 7, 2013).

■ Under Federal Rule of Civil Procedure 42(b), the Court may order separate trials for "convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). In determining whether separate trials are appropriate, the Court considers "several facts, including 'the potential prejudice to the parties, the possible confusion of the jurors, and the resulting convenience and economy.'" *Wilson v. Morgan*, 477 F.3d 326, 339 (6th Cir. 2007) (quoting *Martin v. Heideman*, 106 F.3d 1308, 1311 (6th Cir. 1997)). "The language of Rule 42(b) places the decision to bifurcate within the discretion" of this Court. *Saxion v. Titan–C–Mfg., Inc.*, 86 F.3d 553, 556 (6th Cir. 1996) (citing *Davis v. Freels*, 583 F.2d 337, 339 (7th Cir. 1978)).

■ This Court is vested with the "inherent authority to manage" its docket and affairs "with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, — U.S. —, 136 S.Ct. 1885, 1892, 195 L.Ed.2d 161 (2016) (collecting cases). "[T]he power to stay proceedings" is part of that authority. *Gray v. Bush*, 628 F.3d 779, 785 (6th Cir. 2010) (alteration in original) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936)). In exercising its judgment, this Court must "weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 255, 57 S.Ct. 163 (citing *Kan. City S. Ry. Co. v. United States*, 282 U.S. 760, 763, 51 S.Ct. 304, 75 L.Ed. 684 (1931); *Enelow v. N.Y. Life Ins. Co.*, 293 U.S. 379, 382, 55 S.Ct. 310, 79 L.Ed. 440 (1935)).

■ "Bifurcation may be appropriate where the evidence offered on two different issues will be wholly distinct, or where litigation of one issue may obviate the need to try another issue." *Athridge v. Aetna Cas. & Sur. Co.*, 604 F.3d 625, 635 (D.C. Cir. 2010) (quoting *Vichare v. AMBAC Inc.*, 106 F.3d 457, 466 (2d Cir. 1996)) (internal quotation marks omitted). "[T]he question of bifurcation centers on whether resolution of a single claim would be dispositive for the entire case." *Brantley v. Safeco Ins. Co. of Am.*, No. 1:11–cv–54–R, 2011 WL 6012554, at *2 (W.D. Ky. Dec. 1, 2011) (citing *Smith v. Allstate Ins. Co.*, 403 F.3d 401, 407 (6th Cir. 2005)). The question of bifurcation must be framed in terms of "whether there will be evidence adduced in discovery and offered at trial which is relevant to bad faith but unnecessary and possibly prejudicial to [the defendant]." *Tharpe v. Illinois Nat. Ins. Co.*, 199 F.R.D. 213, 214 (W.D. Ky. 2001).

## Discussion

### A. Bifurcation

██ If a bad faith claimant cannot prevail on its contractual coverage claim, its claim of bad-faith necessarily fails. *Nationwide Mut. Fire Ins. Co. v. Jahic*, No. 3:11–CV–00155, 2013 WL 98059, at *2 (W.D. Ky. Jan. 7, 2013). When a Defendant moves for bifurcation of Plaintiff's bad faith claims Pursuant to Federal Rule of Civil Procedure 42(b), provides that Defendant bears the burden to show that a bifurcation and stay of discovery on the bad faith claim would: 1) serve the interest of convenience, 2) avoid undue prejudice, or 3) would expedite and economize the judicial proceedings. *See Wilson v. Morgan*, 477 F.3d 326, 339 (6th Cir. 2007) (finding that in a motion to bifurcate the Court considers several factors, including the potential prejudice to the parties, the possible confusion of the jurors, and the resulting convenience and economy to the court).

Defendant asks the Court to bifurcate the trial of Plaintiff's breach-of-contract and bad-faith claims and stay discovery on the bad faith claims until the contract claims have been resolved. (Docket # 13–1 at 1). From Defendant's perspective, bifurcation is more efficient because under Kentucky law, Plaintiff's Bad Faith Claims depend on a threshold determination that Defendant, as the insurer, has an obligation to pay under the policy. (Docket # 13–1 at 6). This determination, Defendant argues, will involve the interpretation and application of policy language to the undisputed facts regarding Plaintiff's loss, whereas the bad faith claims will rely on Defendant's motives, conduct, and knowledge when it denied coverage. (*Id.* at 7).

In support of its argument against bifurcation of the bad faith claims and the stay of discovery on the bad faith claims, Plaintiff claims that bifurcation is inappropriate because the conflicting opinions between Plaintiff's and Defendant's experts regarding causation of the loss and interpretation of the policy are "inextricable intertwined" with the evidence which may support their contract claim (which Plaintiff submits resulted in Defendant's "bad faith" investigation). (Docket # 16 at 5–6) (citing *Woody's Rest., LLC v.*

*Travelers Cas. Ins. Co. of Am.*, No. 5:12–CV–92–JMH–REW, WL 108312, at *3 (E.D. Ky. Apr. 24, 2009)). Plaintiff submits that the facts regarding not only what caused Plaintiff's loss but also conflicting experts' points of view regarding those facts are heavily in dispute. (Docket # 16, at 3). Plaintiff argues that this case will not simply require a jury to "apply undisputed facts to simple policy language" but instead will require a jury to determine if the opinions offered by Defendant regarding their claim denial are "credible and accurate" and in order to make that determination the jury must know the backstory as to why Defendant denied their claims. (*Id.* at 17–18).

██ Courts in this district have denied bifurcation where the facts at issue are inextricably intertwined <u>and</u> there is "no purpose to be served by bifurcation of the claims." *See Tharpe v. Illinois Nat. Ins. Co.*, 199 F.R.D. 213, 215 (W.D. Ky. 2001). Although some facts may require the same proof in a coverage claim as they would in a bad faith claim, that concept alone is not a basis for denying bifurcation where bifurcation furthers the interest of judicial economy as resolution of the contract claims may dispose of the entire case and bifurcation is necessary to prevent juror confusion and prevent substantial prejudice to Defendant, as it does here.

### 1. Bifurcation would serve the interest of convenience and would avoid undue prejudice to the parties.

Bifurcation of the coverage claim will eliminate juror confusion and potential prejudice to the parties which could occur if both sets of claims were tried simultaneously. *See Wilson v. Morgan*, 477 F.3d 326, 339 (6th Cir. 2007) (explaining that consideration of convenience and prejudice requires a court to consider "the potential prejudice to the parties, the possible confusion of the jurors") (quoting *Martin v. Heideman*, 106 F.3d 1308, 1311 (6th Cir. 1997); *see also Sanders v. Motorists Mut. Ins. Co.*, 2008 WL 4534089 at *3 (E.D. Ky. Oct. 7, 2008).

Bifurcation would help to prevent prejudice to Defendant by avoiding significant

time and money litigating a bad faith claim that may never arise. The jury will have to determine if the facts support Defendant's denial of the claim based on the testimony provided by the experts on both sides of the case. As such, evidence of contract interpretation and the facts gathered by Defendant and its experts to make those determinations will not be excluded from discovery in the coverage claim, but the likely expense of production of documents and testimony on the bad faith claim which would analyze motive, conduct, and knowledge of Defendant, some of which would otherwise be considered privileged, would result in a vast amount of time and resources spent by both parties.

In contrast, bifurcation would not unduly prejudice the Plaintiff. Litigation of the coverage claim involves the interpretation and application of the policy language to the facts regarding the product loss. While Plaintiff indicates there is a dispute as to the underlying facts regarding the loss (Docket # 16 at 4), those are precisely the types of facts that can be further developed during the discovery phase of the contract coverage claim.

Here, Plaintiff's bad faith claim would be rendered moot if its contract claim is unsuccessful. Bifurcation will allow "the jury to focus on a single issue at a time" and, therefore, will avoid the introduction of irrelevant evidence and additional, potentially unnecessary discovery and avoid jury confusion which could potentially prejudice Defendant.

### 2. *Judicial economy favors bifurcation.*

In the Western District of Kentucky, judicial economy is be measured by whether a threshold issue has the potential to dispose of the entire case. (Docket # 17 at 7) (citing *Brantley v. Safeco Ins. Co. of Am.*, 2011 WL 6012554 (W.D. Ky. Dec. 1, 2011)). While Plaintiff cites to cases from other jurisdictions which have found that bifurcation is inappropriate in first party cases involving bad faith and coverage claims (Docket # 16 at 16–17), the overwhelming case law from the Western District of Kentucky has found that, in first party bad faith and contract coverage cases, bifurcation is routinely granted on the basis of judicial economy, jury confusion, and the dispositive nature of the contract claims. *Alvey v. State Farm Fire &*

*Cas. Co.*, No. 5:17–CV–00023–TBR, 2017 WL 2798501, at *2 (W.D. Ky. June 28, 2017) (holding that "In light of the dispositive nature of [Plaintiff's] breach-of-contract claim and the possibilities of confusion and prejudice resulting from a single trial, there is ample justification to bifurcate the trial of this action"). Courts in this district have found that "[a] brief review of the prevailing precedent indicates first-party bad faith claims are routinely separated from coverage issues." *Brantley v. Safeco Ins. Co. of Am.*, No. 1:11–CV–00054–R, 2011 WL 6012554, at *2 (W.D. Ky. Dec. 1, 2011) (citations omitted).

There is no dispute that Plaintiff's contract claim presents a threshold issue that could moot its bad faith claim. As Plaintiff notes, at the heart of its contract claim is the dispute between the parties concerning causation of the loss at issue and the interpretation of provisions of the relevant insurance policies. (Docket # 16 at 4). Plaintiff does not contend that its bad faith claim would survive if its contract claim fails. As such, bifurcation of Plaintiff's bad faith claim conveniences the court.

### B. Stay of Discovery

There is also good cause to stay discovery on Plaintiff's bad-faith claim until its breach-of-contract claim has been resolved. First, because Plaintiff's bad-faith claim turns on the success of its breach-of-contract claim, failure to issue a stay might result in needless discovery (and added expense). *See Ferrell v. Liberty Mut. Grp., Inc.*, No. 12–112–ART, 2012 WL 12925676, at *2 (E.D. Ky. Dec. 17, 2012). Second, issuing a stay protects the parties from battling over the production of Defendant's investigatory files, which would undoubtedly result in the spending of additional time and resources for both the court and the parties. *See Hoskins v. Allstate Prop. & Cas. Ins. Co.*, No. CIV.A. 6:06–389–DCR, 2006 WL 3193435, at *3 (E.D. Ky. Nov. 2, 2006).

Plaintiff argues that if the jury were to hear evidence of Defendant's claims handling, the jury would find that Defendant's expert(s) lack credibility, whereas if Plaintiff

is excluded from taking discovery on Defendant's claims handling, the jury will not have the full picture as to why certain experts were retained by Defendant or how investigators went about their investigation of the claims. (*Id.* at 16–18). While Plaintiff's arguments regarding bias of the experts is well taken, the stay of discovery regarding the bad faith claim does not preclude Plaintiff from discussing the methodologies utilized by the expert, their background, and any other information that is relevant to the expert's factual determinations.

As such, staying discovery on Plaintiff's contingent claims promotes judicial economy and the legitimate interests of the parties while allowing discovery to go forward on the dispositive contract coverage claim.

## C. Conclusion

As a result, the Court finds that inquiry into the basis for the Bad Faith Claims should be stayed until the necessity for such discovery is certain. Moreover, judicial economy does not dictate that discovery on both these issues proceed simultaneously. Therefore, in order to avoid any prejudice, discovery regarding Plaintiff's Bad Faith Claims should be stayed. Those claims will be held in abeyance until the underlying contract issue has been resolved. Upon resolution of the Contract Claims, the parties, if necessary, will be allowed to pursue discovery on the Bad Faith Claims.

### Order

Having reviewed the claims asserted and the memoranda filed by the parties, the Court concludes that the evidence regarding the claims of bad faith are not so inextricably intertwined with the other claims that they should be tried together. Judicial economy would not be served by allowing discovery of these issues to proceed simultaneously. Bifurcation is necessary in order to avoid prejudice.

Accordingly, it is hereby ORDERED that Defendant Travelers Property Casualty Company of America's motion to bifurcate and to stay discovery (Docket # 13) is GRANTED.